## CITY OF DENISON v. MUNICIPAL GAS COMPANY.

No. 4108.   Decided February 22, 1928.
(3 S. W., 2d Series, 794).

*Hamp. P. Abney, Nelson Phillips (Phillips, Townsend & Phillips* of counsel), and *Joseph W. Bailey* as *amicus curiae),* for plaintiff in error.   The Railroad Commission as created under Sec. 2, Art. 10, and Sec. 30, Art. 16, of the Constitution, is a constitutional and not a legislative body, and the Railroad Commissioners are constitutional officers.   The Legislature has no authority to confer upon constitutional officers, duties foreign to that office, or ones that would in any way interfere with the effective execution of the duties of the constitutional officers.   Words & Phrases (1904 Ed.), Vol. 2, p. 1464; Foster v. Jones, 52 Am., 637; People v. Schue, 69 N. Y. Supp., 597; Constitution, Art. 10, Sec. 2, amendment of 1890; Constitution, Art. 15, Sec. 30, amendment of 1894; 29 Cyc., 1368; Wessenberg v. Bibb Co., 23 S. E., 998; Lloyd v. Smith, 35 Atl., 199; 12 C. J., p. 873, Sec. 376, p. 877, p. 810, Sec. 241; Dupree v. State, 119 S. W., 301; Cowell v. Ayres, 220 S. W., 765; Vincenheller v. Reagan, 64 S. W., 278; Davis v. S. A. & G. S. Ry. Co., 51 S. W., 325; Titus v. Lattimer, 5 Texas, 433; Ex Parte Towles, 48 Texas, 413; Ex Parte Whitlow, 59 Texas, 273; Moore v. Bell, 95 Texas, 151; Fant v. Gibbs, 54 Miss., 403; Massenburg v. Board of Comrs., 23 S. E., 998.

Said Act is unconstitutional because it is an attempt to take away from the courts created by the Constitution of the State of Texas, duties conferred by the Constitution upon them, and to place such duties upon non-judicial officers.

*Head, Dillard, Smith, Maxey & Head, J. F. Holt, J. W. Hassell* and *F. J. Scurlock,* for defendant in error.   The State has, and through the Legislature, may exercise all of the power of an absolute sovereign, except as restrained by the Constitution.   This restraint may be evidenced by an express declaration or by implication.   Where the restraint is implied, the implication must arise out of the language itself; and it must fairly appear that the convention had in mind and intended the prohibition of the particular matter by such implication. The courts have the authority, and are under the duty to declare invalid any law enacted by the Legislature, whose enactment is prohibited by an express declaration in the Constitution or by implica-

tion necessarily and clearly arising out of the language used. This authority will be exercised with great caution by the courts, and only in those cases where the statute is unconstitutional beyond any reasonable doubt. While the courts, in construing a provision of the Constitution, will look to their own decisions and to the recognized rules of interpretation, as given by writers of authority, they will, out of a due regard for a coordinate department of the government, give great weight to a legislative construction of the provision in question. Brown v. City of Galveston (Sup.), 75 S. W., 488; Vincent v. State (Tex. Com. App.), 235 S. W., 1084; Judkins v. Robertson (Texas), 160 S. W., 955, 957; Little v. Halff, 75 Texas, 128; Altgelt v. Gutzeit (Tex. Com. App.), 187 S. W., 220, 225; 12 C. J., p. 714; 12 C. J., p. 787; 12 C. J., p. 791; 12 C. J., p. 794, and note 790; Smith v. Stiles, 195 Ala., 107, 110, 20 So., 905; Whitlock v. Hawkins, 105 Va., 242, 53 S. E., 401; Friff v. Coburn, 101 S. C., 312, 318, 85 S. E., 774; State v. Merchants Exchange (Mo.), 109 S. W., 903; Cheney v. Jones, 14 Fla., 587; Maize v. Godman, 7 Ind., 635; People v. Dixie F. Ins. Co., 168 Ky., 315, 316, 181 S. W., 1123; Drayovitch v. Iroquois Iron Works, 269 Ill., 478, 481, 109 N. E., 999; Koeffler v. State, 157 Wis., 234, 147 N. W., 649; Victor Chemical Works v. Illinois Industrial Board, 274 Ill., 11, 16, 113 N. E., 173; Schultz v. Parker, 158 Iowa, 42, 139 N. W., 175, Ann. Cases, 1915 D, 553; United States v. Shauver, 214 Fed., 154, 156; 6 R. C. L., 79 (Sec. 77), 6 R. C. L., 183 (Sec. 182); State ex rel. Simpson v. City of Mankato, 117 Minn., 458, 136 N. W., 264, 4 L. R. A. (N. S.), 111; Sumpter v. Duffey (Ark.), 97 S. W., 436.

It was proper and within the authority of the Legislature to confer upon the Railroad Commission the power to regulate rates of public utilities of the character described in the Act in question, and to place upon the Commission all of the duties contemplated by the Act. Chap. 14, Laws of the 36th Legislature; Southwestern Tel. & Tel. Co. v. State (Sup.), 207 S. W., 308, 6 R. C. L., p. 183, Sec. 182; 6 R. C. L., p. 226, Sec. 218, p. 227, Sec. 219; Cowell v. Ayres, 220 S. W., 765; Helena v. Helena Water Co. (Ark.), 216 S. W., 26; S. A. & A. P. Ry. Co. v. State (Sup.), 14 S. W., 1063; State v. Jacksonville Terminal Co. (Fla.), 27 So., 233.

*Claude Pollard*, Attorney-General, on behalf of the Railroad Commission, and *H. M. Garwood* of *Baker, Botts, Parker & Garwood* as *amicus curiae*, also filed briefs in support of the position of defendant in error.

Mr. Justice PIERSON delivered the opinion of the court.

For a statement of the case we quote the following from plaintiff in error's application for writ of error:

"Plaintiff in error sought to restrain defendant in error, by injunction, from collecting from patrons within the corporate limits of Denison, and fixing a monthly charge designated as 'ready to serve' charge for fuel gas, in addition to the charge for gas consumed. The temporary injunction having been granted upon presentation of the petition, defendant in error filed a motion to dissolve, alleging that the charge complained of had been duly authorized by the Railroad Commission of Texas, and therefore the asserted right which plaintiff in error was undertaking to prevent it of exercising was a lawful one, and that no court, except the District Court of Travis County, Texas, had jurisdiction to entertain the suit; that this was in accordance with the provision of what is known as the Cox Act, relating to gas utilities, being Chap. 14, Third Called Session of the Thirty-sixth Legislature. It is to be found also as Title 63-B, Vernon's Civ. Stats., 1922 Supplement.

"The plaintiff in error contended that said Act is unconstitutional because the Railroad Commission is a constitutional body as distinguished from one created by statute, and that the Legislature, therefore, had no power to confer upon it duties foreign to its office, or ones that would in any way interfere with the effective execution of its constitutional duties, and because it attempts to take away from courts created by the State Constitution duties conferred upon them, and to place such duties upon non-judicial officers.

"The trial court held that the said Act was valid, and dissolved the injunction.

"An appeal was taken by plaintiff in error to the Fifth Supreme Judicial District Court at Dallas, to reverse the judgment of the trial court, on the ground that the said Act was unconstitutional, but said court affirmed the judgment of the trial court, holding the said Act valid."

The application was granted upon the importance of the question.

In the argument of one of the able counsel for plaintiff in error, it is stated that:

"The important question before the court in this case is that of the power of the Legislature to validly confer upon the Railroad Commission of Texas jurisdiction with respect to gas production, gas rates, etc., as has been attempted by what is known as the Cox Bill.

"Our view is that such power cannot be so conferred. It is based upon what we conceive to be plain provisions of the Constitution which so define the duties of the Commission as to exclude any such jurisdiction, and which, in addition, make the Commission a constitutional body, the scope of whose duties the Legislature is without authority to materially alter."

And further on he says that the simple proposition of law upon which counsel for plaintiff in error rest their position is "that when the Constitution defines the powers and duties of any agency of the government, the legislative branch is without authority to add to or take from those powers and duties, or substantially alter them."

The only provisions of the Constitution which either by express language or by inference pertain to the Railroad Commission are Sec. 2 of Art. 10, and Sec. 30 of Art. 16.

Sec. 2, Art. 10, is as follows:

"Railroads heretofore constructed, or which may hereafter be constructed, in this State are hereby declared public highways, and railroad companies common carriers. The Legislature shall pass laws to regulate railroad freight and passenger tariffs, to correct abuses, and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in this State, and enforce the same by adequate penalties; and, to the further accomplishment of these objects and purposes, may provide and establish all requisite means and agencies invested with such powers as may be deemed adequate and advisable."

Sec. 30, Art. 16, reads as follows:

"The duration of all offices not fixed by this Constitution shall never exceed two years; provided, that when a Railroad Commission is created by law it shall be composed of three commissioners, who shall be elected by the people at a general election for State officers, and their terms of office shall be six years, provided, railroad commissioners first elected after this amendment goes into effect shall hold office as follows: One shall serve two years, and one four years, and one six years, their terms to be decided by lot, immediately after they shall have qualified. And one railroad commissioner shall be elected every two years thereafter. In case of vacancy in said office, the Governor of the State shall fill said vacancy by appointment until the next general election."

The burden of the argument of those who contend that jurisdiction with respect to gas production and the power to regulate gas rates could not be placed with the Railroad Commission is that *the*

*Railroad Commission* was created and intended in these constitutional provisions. But the very wording of the Constitution itself wholly negatives this assertion. It expressly provides that certain objects and purposes may be accomplished through means and agencies to be created by the Legislature.

It is insisted that *the Railroad Commission* was created by Sec. 2, Art. 10, or that authority was given for *its* creation, *with these defined and enumerated powers,* and therefore it could exercise no others. But it is wide of the mark to say that Sec. 2, Art. 10, created a Railroad Commission or provided that a Railroad Commission should be created. It simply authorized the Legislature to establish all requisite means and agencies and invest them with such powers as it may deem adequate and advisable. No particular body was provided for, and in Sec. 30, Art. 16, care was taken not to provide for a Railroad Commission, but left the means and agencies wholly to legislative judgment and discretion.

There is nothing in the Constitution to prevent the Legislature from repealing the law creating the Railroad Commission, and from abolishing it outright and discontinuing its services to the State altogether. There is no obligation placed upon the Legislature to provide for and maintain the Railroad Commission at all. Further, there is nothing whatever that by inference or otherwise indicates a purpose to create a body with powers and duties limited to matters pertaining to railroads. The Legislature may, under the broad authority of Sec. 2, Art. 10, establish an agency, or several agencies. Certainly the Railroad Commission as created by the Legislature, and as now constituted, was not specifically contemplated. Neither is there language in Sec. 30, Art. 16, which establishes a Railroad Commission or limits the Legislature to a body designated "The Railroad Commission" in its authority to create agencies to accomplish the purpose stated in Sec. 2, Art. 10. Prior to the adoption of the amendment to Sec. 30, Art. 16, on December 21, 1894, the Legislature had already created a Railroad Commission, and provided that it should be composed of three members, and that their tenure of office should be two years, and that the members should be appointed biennially by the Governor. Sec. 30, of Art. 16, of the Constitution, prior to the adoption of the amendment, related to tenure of office where the tenure was not fixed by the Constitution, and simply provided that "the duration of all offices not fixed by this Constitution shall never exceed two years." The effect and purpose of the amendment was to remove such governmental agency,

when created, and charged by law with the arduous and responsible duties of regulating freight and passenger tariffs and the correction of abuses by railroads, from the two years' tenure, and to provide that the tenure of office of the members of such body should not end at the same time. Of course the purpose and wisdom of that provision is apparent. That these were the purposes of the amendment to the tenure of office provision of the Constitution is clear.

The framers of the Constitution, knowing of Sec. 2, Art. 10, of the Constitution, and knowing that a Railroad Commission had been created by the Legislature with very limited tenure of service, and subject to change with every political administration, accomplished the results desired and took pains not to create a constitutional office, but left the office subject to the will and judgment of the Legislature, where it had already been reposed. This, we think, is made reasonably clear in the amendment to Sec. 30, Art. 16, wherein these words were used: "provided that *when* a Railroad Commission is created *by law* it shall be composed," etc. It would be almost absurd to think that the framers of this constitutional provision used this language carelessly or unintentionally. Too, it would have been perfectly natural and easy in the amendment to Sec. 2, Art. 10, for them to have used words creating the Railroad Commission a constitutional body, if they had so intended or desired. To say that they did so intend, and that the people in adopting the amendment did so intend, is to disregard the words used and the purpose apparent, and to place words and meaning in the amendment we are unable to find.

In three different places the Constitution authorizes the creation of an agency or agencies of government by the Legislature. Sec. 2, Art. 10, makes it obligatory upon the Legislature to pass laws, and for the accomplishment of the objects and purposes of those laws it provides that the Legislature may establish all requisite means and agencies and invest them with such adequate powers as it may deem advisable; thus clearly leaving *to the Legislature* the creation of the agencies to accomplish these purposes. Again, in Sec. 30, Art. 16, the Constitution provides that *when* a Railroad Commission is created certain tenure of office shall apply to its members, thus expressly affirming a purpose *not* to then and there create such an agency. And finally, in Sec. 30, Art. 16, the Constitution further provides that when a Railroad Commission "is created by law," etc., thus definitely declaring that such body or agency of government may be created by law, that is, by the Legislature.

The case of Cowell et al. v. Ayers et al., 110 Texas, 348, 220 S. W., 764, by this court, is in point. It involved the interpretation of Sec. 30a, Art. 16, of the Constitution, which reads:

"Sec. 30a. The Legislature may provide by law that the *members of the Board of* Regents of the State University and Board of Trustees or *managers,* of the educational, *eleemosynary,* and penal *institutions* of the State, and such boards as have been, or may hereafter, be established by law, may hold their respective offices for the term of six (6) years, one-third of the members of such boards to be elected or appointed every two (2) years in such manner as the Legislature may determine; vacancies in such offices to be filled as may be provided by law, and the Legislature shall enact suitable laws to give effect to this section." (Italics ours.)

The Thirty-sixth Legislature had passed a law creating the State Board of Control, and in express terms abolished the office of board of managers of lunatic asylums, and conferred the duties theretofore imposed upon the boards of managers of said asylums upon the State Board of Control.

The issue in the case was the same as in the instant case, as was disclosed in the following excerpt from the opinion written by Associate Justice Greenwood:

"The above section is claimed by appellees to continue in office the members of the boards of managers for the insane asylums, despite the Act of the Legislature abolishing such boards, for two reasons:

"(1) Because the section establishes or creates boards of managers for the asylums.

"(2) Because the section, by its own terms, or after the exercise by the Legislature of the authority which the section confers, fixes the tenure of the members of the boards at six years, with the terms of one-third the members expiring biennially, and thereby puts both the offices of the members and their duties and tenure beyond abridgment or abolition by the Legislature."

The court held that the Act was not violative of the Constitution, and said:

"The Legislature is without power to abolish constitutional offices, or to shorten terms of office which are fixed by the Constitution. The principle invalidating such legislative Acts is well stated by the Supreme Court of Mississippi to be that—

" 'The framers of the organic law, by creating the office and specifying the terms, have unmistakably indicated their will: First,

that the State shall always have such an officer; and, secondly, that the duration of the term of each incumbent shall depend not on legislative will, but on the solid basis of an ordinance that cannot be changed save by a change in the Constitution itself.' Fant v. Gibbs, 4 Miss., 403, 404.

"However, the mere mention of an office or of its term in a Constitution lacks much of creating an office or prescribing the duration for which it is to be held.  *  *  *

"The exercise of the power of the Legislature to make improving changes in the non-constitutional agencies of public service in promotion of the general welfare is conducive to good government. The power ought not to be restrained further than the people have plainly ordained."

The case of Helena Waterworks Co. v. City of Helena, 140 Ark., 597, 216 S. W., 26, by the Supreme Court of Arkansas, is directly in point.

Also, we make special reference to the able opinions of Judge Hamilton and Judge Looney in this case, City of Denison v. Municipal Gas Co., 257 S. W., 616.

If it had been intended that the Constitution should itself create the Railroad Commission, and limit its jurisdiction, as claimed by plaintiff in error, it cannot be doubted that it would in specific language have done so, as in the case of the Prison Commission and the executive, legislative, and judicial offices of the State, and not by amendment to the general tenure of office provision of Sec. 30, Art. 16, nor left it to bare inference, if there is such inference, in the words used in Sec. 2, Art. 10.

The history of Sec. 2, Art. 10, of the Constitution, is as follows:

Prior to 1890, Sec. 2, Art. 10, simply provided that:

"Railroads heretofore constructed, or which may hereafter be constructed, in this State are hereby declared public highways, and railroad companies common carriers. The Legislature shall pass laws to regulate railroad freight and passenger tariffs, to correct abuses, and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in this State, and enforce the same by adequate penalties."

Thus the Constitution placed upon the Legislature the duty to pass laws to regulate, correct, prevent, etc., and to provide penalties.

The repeated efforts in the Legislature to enact a statute *delegating* the power to "regulate freight and passenger tariffs, to correct abuses, and prevent unjust discrimination and extortion" to another

governmental body, by providing for a commission, was met by the cogent argument that this power, by the above quoted Sec. 2, of Art. 10, of the Constitution, was expressly lodged with the Legislature, and must be exercised by it alone, and could not be delegated.

In the session of 1889, on a bill to create a Railroad Commission and delegate to it these powers, the conflict reached its climax, the chief question being the constitutionality of such a measure. Among the great lawyers of the State and of the Legislature who wrote upon or debated the issue, Judge Roberts, former Chief Justice of this court, said:

"In that instrument it is provided that railroads heretofore constructed, or that may hereafter be constructed in this State are hereby declared public highways and railroad companies common carriers. The Legislature shall pass laws to correct abuses and prevent unjust discrimination and extortion in rates of freight and passenger carriers on the different railroads in the State, and shall from time to time pass laws establishing reasonable maximum rates of charges for the transportation of passengers or freight on said railroads and enforce all such laws by adequate penalties. From this it is plain the power of regulation by the State has reference to the accommodation of people in transportation and travel, and not to furnish labor to employees of the company, or to give opportunity for labor on the roads, or to regulate the wages of it. And even the constitutional mode of regulation for the objects contemplated is limited to the passing of laws for the regulation and to having such laws enforced by proper penalties, which penalties can only be recovered by suits or prosecution in courts of the State. And from this it follows it cannot assume the management of roads in this State by commissioners appointed to prescribe terms of transportation and fare in any case whatever. For it has often been held in our courts that when a power to do a particular thing in a specified way has been conferred on a body, that body is expressly required to perform it by its own action. It cannot constitutionally depute the power to do it to another body created to act as a substitute for them (it)."

Judge Thomas J. Brown, then a member of the Legislature, but who subsequently became Chief Justice of this court, took the opposite view, that this provision of the Constitution did not limit, and was not a limitation upon, the power and authority, inherent in the Legislature, to create such a commission and delegate these powers to it. To remove from doubt the authority of the Legislature to delegate these important powers, an amendment to the Consti-

tution was submitted, and in 1890 the following was added to Sec. 2, Art. 10:

"* * * and, to the further accomplishment of these objects and purposes, may provide and establish all requisite means and agencies invested with such powers as may be deemed adequate and advisable."

In view of the wording of Sec. 2, Art. 10, the amendment definitely provided a constitutional grant and authority for these powers to be exercised by a body or agency other than the Legislature itself, and solved the vexing question which had agitated the minds of the statesmen of the Legislature and the State, that the Legislature was required to do and perform these duties by its own actions.

The fact that it makes certain that means and agencies of government with powers to fix and regulate rail rates and prevent abuses, etc., may be created *by law,* does not create a body over which the jurisdiction of the law-making body is limited to the making of rates and matters pertaining to railroads. It was made certain that the Legislature could create agencies with such powers, and that the agencies so created could exercise those powers; but there is nothing in the amendment to Sec. 2, Art. 10, that even remotely indicates that a body known as a Railroad Commission is created thereby, or that such agencies as may be created by the Legislature shall be limited in jurisdiction to powers pertaining only to railroads.

If it be admitted and assumed that the amendment to Sec. 2, Art. 10, is mandatory—that is, *that it is made the imperative duty of the Legislature to create means and agencies* which should exercise the powers and functions granted, it cannot be said with any reason that it thereby itself created such agencies, or that it created what was called, and is now known as The Railroad Commission of Texas, or that this provision even directed or commanded the Legislature to create this particular body. Even if we construe the words used, "may provide and establish," as mandatory, yet we are bound to construe their clear meaning to be that the Legislature "may provide and establish * * * means and agencies * * * as may be deemed adequate and advisable" *by it.* We will not strain them to mean a limitation upon the Legislature to limit such agency or any agency to the exercise of powers pertaining only to railroads. And in this holding we do not deem it necessary to fall back upon the rule that a statute should not be declared unconstitutional unless it is clearly so, or that all reasonable doubt must be applied in favor of its validity.

We are in perfect accord with the principle that "when the Constitution defines the powers and duties of an agency of the government, the legislative branch is without authority to add to or take from those powers and duties, or substantially alter them," and if we could hold that the Constitution defines the powers and duties of the Railroad Commission of Texas, or names an agency that shall perform these powers and duties, we would hold that the Railroad Commission of Texas, or such named agency, is without authority to exercise powers other than those pertaining to railroads. But this we are unable to hold. The Constitution gives such broad latitude to the Legislature as to how it shall effect and accomplish the objects and purposes named that we are constrained to hold that these provisions do not so limit these means and agencies to exclusively railroad matters as to prohibit the Legislature from referring to them other governmental duties and functions.

The second proposition, that Chap. 14, Third Called Session of the Thirty-sixth Legislature, is unconstitutional "because it attempts to take away from the courts created by the State Constitution duties conferred upon them, and to place such duties upon non-judicial officers," appears to have been abandoned. At least it has not been argued. The question involved in this proposition was definitely settled in Munn v. Illinois, 94 U. S., 113, 24 L. Ed., 77. The fixing of a rate to operate prospectively is not a judicial function, though whether or not a rate is reasonable is a question for judicial determination.

The judgment of the Court of Civil Appeals is affirmed.