**F. C. HENDERSON, INC., v. RAILROAD COMMISSION OF TEXAS et al.**

No. 403.

District Court, W. D. Texas, Austin Division.

Feb. 10, 1932.

Dorenfield, Foster & Fullingim, of Amarillo, Tex., for plaintiff.

James V. Allred, Atty. Gen., and Fred Upchurch and Maurice Cheek, Asst. Attys. Gen., for the Commission.

Before HUTCHESON, Circuit Judge, and GRUBB and WEST, District Judges.

HUTCHESON, Circuit Judge.

This is a suit brought by the plaintiff, a corporation of the state of Delaware, for a temporary injunction pending final hearing, and upon final hearing for a permanent injunction, against the members of the Railroad Commission and the Attorney General of Texas, from harassing, annoying, or preventing plaintiff from operating its natural gasoline plant, and from prosecuting any suit for injunction or for penalties against plaintiff and the persons from whom it has purchased gas. The prayer for temporary injunction having been pressed, a statutory court was organized, and the matter came on for hearing before the Court on both the temporary and final injunction.

The statutes whose validity is attacked, and whose enforcement is sought to be en-

joined, are articles 6008 and 6014 of the Revised Civil Statutes of Texas of 1925, as amended by the Forty-Second Legislature at its First Called Session in 1931, c. 26 (Vernon's Ann. Civ. St. arts. 6008, 6014). These statutes purport to deal with and prevent the dissipation of the state's natural resources of oil and gas; they generally denounce waste and specifically prohibit the wasteful utilization of natural gas and its escape into the air. These statutes were enacted in pursuance of a policy entered upon by the state of Texas many years ago to conserve from waste its vast deposits of oil and gas. They, with other enactments, make out the general outline of the legislative plan, the administration and application of which is confided to the Railroad Commission of Texas under appropriate laws. In MacMillan v. Railroad Com. of Texas (D. C.) 51 F.(2d) 400, in which the orders of the commission were declared invalid because in violation of the statutes, this court had occasion to examine this statutory plan, its general validity, and the place of the commission in its carrying out. We there affirmed the general power of the state to conserve its natural resources, including oil and gas, and to confide to the commission the administration of those laws.

What is in question here is not the orders of the commission, but the statutes themselves, for here the commission is undertaking, through the Attorney General, to enforce the statutes by appropriate court action, which, as to this petitioner, has taken the form of a cross action filed in this suit, with a prayer for injunction against petitioner's waste of gas. The question for our decision is whether the plaintiff is right in its contention that the statutes bear so hardly and unjustly upon it as to deny it due process, or whether defendants, become cross-plaintiffs, are right that the statutes assailed by plaintiff are valid conservation measures, the violation of which cross-plaintiffs are entitled to have enjoined. The facts of the case are stipulated; they are without dispute. From them it appears that plaintiff, more than two years ago, constructed at a cost of several hundred thousand dollars a modern gas extracting plant, and has been operating it continuously since in a competent and effective manner. That its supply of gas is obtained from owners and operators of wells under contracts substantially alike in terms. These contracts obligate plaintiff to buy certain quantities of gas at a price fixed on the basis of its gasoline content, to extract that content and to turn back to each

seller sufficient residue gas to operate its properties. They further provide that if plaintiff should sell the residue gas it will divide the proceeds with its vendor.

These contracts contemplate that if the gas is not sold it will be released and discharged into the air, the proof being that there is no way to use the gas in the extraction plant and that unless it may be used for some other purpose the necessary result of the operation of the plant is to blow it into the air. None of the residue gas has, during the more than two years operation, been sold. It has to the extent of 46,000,000,000 cubic feet been blown away into the air. Before being blown into the air and wasted, each 1,000 cubic feet of gas yields .34 of a gallon of gasoline, with the result that one twenty-fourth of its heat units are conserved, twenty-three twenty-fourths wasted. It was stipulated that "the residue gas can be utilized for light, fuel or power for domestic, industrial or manufacturing purposes in its condition as produced at the wells or after the gasoline content has been extracted." It was further stipulated that "95% of the gas produced in Texas contains an extractable quantity of gasoline, and there is a market in the State for some residue gas, no market at this time existing however, for the residue gas from plaintiff's plant because of conditions in the territory, unless the Common Purchaser Act of the First Called Session of the Forty first Legislature can be made effective." There was some testimony that at one time the wells produced a small amount of oil, but tests made the week before the trial showed no oil produced from any of them. That operated in accordance with the standard method of production as fixed by the Commission's orders that they should not run on open flow but on 50 per cent. capacity, they would produce no oil. We conclude, then, that to all intents and purposes the wells in question are gas wells, and not oil wells; are wells producing natural gas only.

The statutes complained against as construed and sought to be enforced by the defendants prohibit the use of gas as plaintiff uses it. Article 6008 provides that: "Any party or person * * * in possession of any well producing natural gas only, in order to prevent said gas from wasting by escape, shall, within ten (10) days after encountering such gas, confine said gas in said well until said gas shall be utilized for light or fuel; provided, however, the Commission may permit the use of such gas for the purpose of being introduced into an oil or gas

bearing stratum in order to maintain or increase the rock pressure, or otherwise increase the ultimate recovery of oil or gas from such stratum and for any other purpose which, under circumstances surrounding each particular case, might be found by the Commission, after hearing, to be practical and conducive to the public welfare." Article 6014, after providing "Neither natural gas nor crude petroleum shall be produced, transported, stored, or used in such manner or under such conditions as to constitute waste," declares: "As used herein the term 'waste' in addition to its ordinary meaning, shall include: * * * (e) The wasteful utilization of natural gas; provided, however, the utilization of gas from a well producing both oil and gas, for manufacturing gasoline, shall not be construed to be waste. * * * (j) The escape into the open air of natural gas except as may be necessary in the drilling or operation of a well."

Plaintiff denounces these statutes and the actions of the commission in undertaking to prevent the taking of the gas from the wells from which plaintiff receives its supply for such wasteful uses as plaintiff engages in, as depriving it of its property without due process in that, though it is not an owner or operator of a well, it has contracted with such operators and that should the commission under color of the statutes in question prevent its contractors from delivering its supply its plant would be ruined and its property taken. That, in short, though the pressure of the statute is not directly applied to it, but only indirectly through pressure upon persons having contractual relations with it, such pressure is as effective to deprive it of its property, and as clearly within constitutional prohibitions as though it were directly applied. Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283. It attacks article 6008 as invalid (1) because it undertakes to confine plaintiff's gas in the ground and prevent its using it except for light and fuel, in the face of the fact that there is no present market for gas for such purposes, and (2) because the statute is invalid as containing a delegation to the Commission of power to suspend the law.

As to the prohibition in article 6014 invoked by defendants against it, it contends that the statute is invalid, as it deprives the owner of property having no characteristics which subject it to public control, of his liberty to deal with it free from such control.

Plaintiff concedes that oil and gas constitute natural resources, and that the state has the right to prevent wanton and reckless waste thereof. It asserts that this right does not extend to directing or limiting the uses to which gas and oil may be put. It seeks to differentiate a long line of Federal cases, beginning with Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 S. Ct. 576, 44 L. Ed. 729, continuing with Walls v. Midland Carbon Co., 254 U. S. 300, 41 S. Ct. 118, 65 L. Ed. 276, and culminating in Bandini Petroleum Co. v. Superior Court of the State of California, 284 U. S. ——, 52 S. Ct. 103, 76 L. Ed. ——, affirming the right of the state to control, for the purpose of protecting from waste, the uses of its natural resources of oil and gas by the claim that matters stand differently in this state than in those, because oil and gas is held here under a different kind of title.

We do not agree with plaintiff that the fact that the rule in Texas which recognizes the ownership of oil and gas in place, and gives to the lessee a determinable fee therein (Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27; Cosden Oil Co. v. Scarborough (C. C. A.) 55 F.(2d) 634), operates at all to deprive the state of the power to conserve its natural resources, or limit the reasonable exercise of that power. We are not in doubt that both upon considerations of securing and preserving the correlative rights of persons in property, though owned by them, of the shifting and fugacious kind which oil and gas is, and upon considerations of conserving the natural resources of the state, ample power exists in the Legislature to prevent the wasteful utilization of oil and gas, and to regulate and control their production and use in such reasonable way as to bring about their conservation, and to prevent their dissipation by waste. We therefore reject all of plaintiff's contentions against the statutes founded upon legislative want of power, and address ourselves to a consideration of the question whether the Legislature has clearly and in a reasonable way undertaken to exercise that power. We think it has. We find in the enactment of article 6008, requiring persons discovering gas in order to prevent its waste by escape, to confine it, and providing for inquiry by the commission into the propriety of an authorization, if found, of other uses, neither unreasonable exertion or prohibited delegation of legislative power. This article, a part of an entire program, is of a piece

with the balance of the applicable law. It is designed to and its very terms prevent, either the arbitrary shutting down of gas wells, or the wasteful escape of gas into the air. The statute carefully avoids an express requirement that the gas shall at all events be confined. It orders it confined in order to, and only in order to, prevent its escape by waste. It provides for an orderly and careful inquiry into and determination of the question of fact whether there are other uses than those of light and fuel, to which the gas may be put without permitting waste by escape. It delegates to the body charged with the duty, and informed by experience in its discharge, of conserving the oil and gas resources of the state, the fact determination necessary to release a well. Such delegation to an administrative fact finding body like the Railroad Commission is universally recognized as reasonable, valid and appropriate. Armstrong v. Whitten (D. C.) 41 F.(2d) 241; United States v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563; Brazeale v. Strength (Tex. Civ. App.) 196 S. W. 247; Trimmier v. Carlton, 116 Tex. 572, 296 S. W. 1070; City of Denison v. Municipal Gas Co., 117 Tex. 291, 3 S.W. (2d) 794. Plaintiff has not shown any finding by the commission after hearing, of the necessary fact that its use of gas is not wasteful, and it affirmatively appears from the proof that the gas is, in the face of the statute, being permitted to waste by escape into the air. We conclude, therefore, that the section under review in obligating persons to confine gas within their wells in order to prevent its waste by escape until it can be used for light or fuel, unless, upon a proper showing, authority has been given by the commission to the owner to utilize the gas for some other nonwasteful purpose, is valid as against plaintiff's attack, and that plaintiff may not, for itself or its purchasers, complain of its reasonable enforcement.

We are not unmindful of the proof by stipulation and by evidence that there is no market now afforded for use of the gas in question here for light and fuel, or of plaintiff's earnestly advanced claim that there will, in reasonable probability never be. We do not hold that upon proof which should establish that the effect of a statute will be to permanently deprive owners of wells, or unreasonably restrict them in, the use of their gas, they would be entitled to no relief.

■ Broad as we believe the legislative power in conservation to be, it of course has limits, and it may not be exerted either outside of the field in which it may legitimately operate, Kansas Natural Gas Co. v. Haskell, 221 U. S. 229, 31 S. Ct. 564, 55 L. Ed. 716, 35 L. R. A. (N. S.) 1193, or in an oppressive way. Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387; J. H. McLeaish v. Binford (D. C.) 52 F.(2d) 737; MacMillan v. R. R. Comm., supra.

■■ If we could agree with plaintiff's contention advanced by claim rather than by proof, that the state of Texas is so underlaid in all its parts with vast supplies of gas that if confined until it finds a market for light and heat, the use of the gas in question here will be forever restrained, we should agree with its conclusion that a statute purporting to conserve it for a use to which it could never be devoted is not regulation, but confiscation. We do not find the facts to be as asserted; on the contrary, we find not only a record void of such proof, but that judicial notice of the condition and development of the industry which we are entitled to take (MacMillan v. R. R. Com., supra; People v. Associated Oil Co., 211 Cal. 93, 294 P. 717, 723; Gilbreath v. States Oil Cor. [C. C. A.] 4 F.[2d] 232), tends to, if it does not conclusively, establish that the supply of this great natural resource is limited, and unless measures to prevent its wasteful handling and use are taken, these apparently vast resources will soon be dissipated, never to be reclaimed. So finding, we see nothing unreasonable in the statute, and especially nothing unreasonable in its application to plaintiff and its contractors, whose use of the gas is not only in direct violation of the purpose of the statute, but of its very terms, constituting, as it does, reckless and improvident waste of the plainest kind.

■ Nor do we find plaintiff any better circumstanced as to its attack upon article 6014. Whatever difficulty we might have had in finding a sufficiently clear guide to the legislative intention, and a definite expression of its will in the prohibition in subdivision (e) of the wasteful utilization of gas, with its proviso that the utilization of gas from wells producing both oil and gas for manufacturing gasoline shall not be construed to be wasteful, is obviated by the clear and precise provision of subdivision (j), prohibiting the escape into the open air of natural gas, except as may be necessary in the drilling or operation of a well. This provision taken in connection with article 6008 and subdivision (e) of article 6014 makes the legislative intent clear. It operates to

prohibit the escape into the air of natural gas, either from the wells themselves or from plants to which the gas is delivered for the extraction there of its gasoline content, and subsequent wasteful blowing into the air.

While we find the statutes valid, we are impressed with plaintiff's contention that the penalties provided by the several statutes of $1,000 a day (Rev. St. Tex. 1925, arts. 6008, 6036, as amended by Acts 42d Leg. [1931] 1st called Sess. c. 26, §§ 2, 3 [Vernon's Ann. Civ. St. Tex. arts. 6008, 6036]), each and every day to constitute a separate offense, are on their face so drastic, so excessive, and extreme as that they appear plainly to be designed to affright those subject to the act into abject and incontinent submission. It is fundamental that there is no due process in a statute which, though it provides for penalties collectible by suit, makes every day a new offense, and thus piles them so heavily on as to make prohibitive the hazard of court trial. Such provisions in statutes preventing access to the courts to try out disputed questions of right, deprive the citizen of his fundamental right to "know his rights, and knowing dare maintain them." They may not be so pressed. Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Okla. Operating Co. v. Love, 252 U. S. 337, 40 S. Ct. 338, 64 L. Ed. 596.

We do not, however, find it necessary to at this time issue a decree against the state, preventing enforcement of the penalties, for upon the record before us it is plain that the state is not pursuing, nor proposing to pursue, any drastic or oppressive course. On the contrary, the state has submitted the issue of its right to judicial review by cross-action in this case. In view of this situation, the only decree that we should now enter is one denying plaintiff the injunction prayed, and granting the state an injunction against plaintiff's wasteful use of gas, such injunctive decree to provide that plaintiff must refrain and desist from using gas at its plant unless and until provision is made for the utilization of the residue gas without waste.

The case will be kept open, however, for orders at the foot of the decree, and should it be made later to appear that the defendants are undertaking to enforce the law by claiming penalties in advance of the final determination of its validity, plaintiff may apply to this court for an injunction of the kind granted in Oklahoma Operating Co. v. Love, supra, to protect it against the consequences of drastic and oppressive efforts of the state to compel a surrender of plaintiff's undoubted right to in good faith, and upon reasonable ground, contend in the courts for the correctness of its view that the statutes as applied to it are confiscatory.