## DANCIGER OIL & REFINING CO. OF TEXAS et al. v. SMITH et al.
### No. 391.

District Court, N. D. Texas, Amarillo Division.
June 25, 1933.

As Amended on Denial of Rehearing Aug. 3, 1933.

Nelson Phillips, of Dallas, Tex., I. J. Ringoldsky and W. G. Boatright, both of Kansas City, Mo., and D. H. Culton and S. A. L. Morgan, both of Amarillo, Tex., for complainants.

James V. Allred, Atty. Gen., Willis E. Gresham and Maurice Cheek, Asst. Attys. Gen., and Robert E. Hardwicke, Sp. Counsel, of Ft. Worth, Tex., for defendants.

Before HUTCHESON, Circuit Judge, and WEST and WILSON, District Judges.

HUTCHESON, Circuit Judge.

Plaintiffs, producing and refining companies owned by the same interests, bring this bill to enjoin the orders of the commission limiting the production from wells of the oil and refining company in accordance with the proration orders promulgated for the Panhandle field.[1]

---

[1] The so-called Panhandle field is a gigantic geological structure, extending a distance of approximately 125 miles, with an average width of about 15 miles. The entire area constitutes one gas reservoir. Scattered through practically the entire length of that area are more than thirty pools known to be productive of oil, more or less separated by reason of their position in and on the structure, in the sense that there is no migration of oil from one pool to another, but all of the fields are indirectly connected with each other through the formations containing gas. These formations, besides oil and gas, also contain water. In a well drilled within any of the known oil pools, two or more producing formations are often encountered. In such cases the higher formation usually produces gas only, while both gas and oil are found in the lower formation. By reason of the fact that this field is one gas reservoir more or less intimately connected, production either of gas, or of oil and gas, in any part of the reservoir theoretically affects the pressure all over it. As a practical matter, of course large productions of gas quickly and directly affect the formation in the vicinity of the production. Because of the character of the field, some sections produce gas only, some gas and oil, some sweet gas, some sour gas, because of the fact that for a part of the gas produced only is there an outlet for light and fuel, while for other parts of it there is none, and that the only use that can be made of it is for carbon black or for stripping. Because of the fact that some of the so-called oil wells produce a very small quantity of oil and enormous quantities of gas, the commission has found

The petition alleged that the plaintiffs' wells were being produced to the full producing capacity permitted by the use of a sufficient gas oil ratio, and that no waste of the state's resources is being caused by the method or rate of production. The Refractionating Corporation, alleging that, under special contracts requiring it to deliver oil and its products, it had sold and contracted to sell the products which it would obtain from the wells of the producing company, alleged its inability both to get oil elsewhere to fill these contracts, and to require its customers to take other oil, if it could obtain it. It prayed an order of the court pending the decision of the questions presented, permitting it to continue its operations.

On the balancing of conveniences, a restraining order was entered, permitting the wells to produce until the case could be submitted on full testimony and briefs. These have now been furnished, and the case stands for submission on the merits. So standing, it presents the question whether the order challenged is so arbitrary and confiscatory as that within the meaning of the applicable decisions [People's Petroleum Producers v. Smith (D. C.) 1 F. Supp. 361; Henderson v. R. R. Comm. (D. C.) 56 F.(2d) 218; MacMillan v. R. R. Comm. (D. C.) 51 F.(2d) 400; Nectow v. Cambridge, 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842; Pa. Coal Co. v. Mahon, 260 U. S. 393, 43 S. Ct. 158, 67 L. Ed. 322, 28 A. L. R. 1321; MacLeaish v. Binford (D. C.) 52 F.(2d) 151] it has no foundation in reason, is a mere arbitrary exercise of power having no substantial relation to the authority justly conferred, or whether, within the meaning of Champlin Ref. Co. v. Corp. Comm., 286 U. S. 210, 52 S. Ct. 559, 76 L. Ed. 1062, and of People's Petroleum Producers v. Sterling (D. C.) 60 F.(2d) 1041, the evidence is insufficient to overcome the prima facies of the commission's action, and the order stands as valid.

■ A merely casual examination of the pleadings, the proof, and the arguments in this case make it at once clear that on its face this is a different case from the others we have decided. Unlike in those cases, the allowable here is fixed at a very large proportion of the potential of the field. According to the commission, it is fixed at a little less than one-third of the potential; according to Danciger, at about one-half of it. He claims that the total potential production is only 88,000 barrels; they claim it is from 130,000 to 142,000. Again, unlike the orders in those cases which apportioned the allowable to the field on a per well basis rather than in accordance with the potential of the wells, so as to give to each well reasonably its proportion of the allowed production, this order distributed the allowable on a potential basis in an effort to fairly allocate to each producer that portion of the production which the situation and nature of his properties entitles him to have. It is therefore plain that it cannot be said that there is anything arbitrary or unreasonable on the face of the order, either in the amount of production to which a particular field is limited or in the method of its distribution. The question here is not as it was in those cases, whether the allowable is a fairly reasonable one for the field, or whether it is fairly apportioned, but the question is the ultimate one, of the validity in this field, of proration orders. Upon the evidence before us, plaintiffs ask us to say that reasonable minds could not reach the conclusion the commission reached, that limiting the production as they did would have at least some tendency to conserve, and to prevent, the waste of the state's natural resources of oil and gas. In short, this is a case in which proration itself is contested on the ground that the facts in evidence conclusively establish that a general limitation on production, so as to require wells to ratably produce, has no tendency whatever to prevent waste.

Plaintiffs assert that the only valid limitations on their production which the commission ought to or can make would be to re-

itself, through the diversity which the situation presents, confronted with a disturbed and disturbing condition. The regulations which it has made and undertaken to make, in an effort to conserve the natural resources of the product and energy so richly stored there, while at the same time giving the proper consideration to the rights and interests of the producers and owners, have brought about almost continual litigation and turmoil of a conflicting and changing character. For instance, until just before this suit was filed, plaintiffs had had litigation pending against the commission in the state courts since the spring of 1931, in the course of which, by agreement of parties, pending the final decision of the matter, plaintiffs had been permitted to produce unrestricted. Danciger Oil & Ref. Co. v. R. R. Comm. (Tex. Civ. App.) 49 S.W.(2d) 837. In addition, the commission has had several litigations with gas companies, Texoma Natural Gas Co. v. Railroad Comm. (D. C.) 59 F.(2d) 750, with a stripping plant, Henderson v. Railroad Comm. (D. C.) 56 F.(2d) 218. This was a controversy over the attempt of the commission to prohibit, as wasteful, the use of natural gas for stripping, after the passage of the then statute. Notwithstanding this suit terminated favorably to the commission, in view of the general chaotic conditions in that section, the commission has latterly been issuing permits, permitting such stripping, while the Legislature has declared that the use to the extent of 25 per cent. of the open flow of the wells producing gas is not wasteful, if there is no use for the gas for light or fuel.

quire the use of a proper gas oil ratio, and to supervise the field operations to prevent the use of wasteful production methods there. They say that the evidence is conclusive, that there will be no waste whatever if all the wells are allowed to flow to the full capacity permitted by a proper gas oil ratio, and that a finding to the contrary is capriciously arbitrary; that there is ample market demand and transportation facilities for all of the production which under such ratio the wells will produce, and that for these reasons an order limiting the oil to any fixed amount must be regarded as merely arbitrary and without relation to the powers conferred. In addition to this contention, plaintiffs reargue with learning and ability, the power of the state to authorize the commission to, and the power of the commission to, prevent, by limitation on production, wastage of oil and gas.

■■ Without following these arguments, it is sufficient to say that we are fully committed, by the decisions already rendered, to the proposition that the Legislature has the power to prevent such waste, and that it has lawfully and effectively delegated that power to the commission. The difficulty confronting the defendants in their efforts to prevent waste is not now, it has never been, one of defect in the statutes. It has been one, when it has appeared, of defect in their orders, in that they did not have a reasonable relation to the power conferred, were drastic and oppressive beyond the necessities of the case, went further in limitation of private use than the public interest demanded. We have no difficulty in finding, we have never had, under the statutes of this state, that the commission has the power to regulate production in all of the oil and gas fields of Texas, to prevent the occurrence of waste therein. In the cases cited above in which we have found the orders confiscatory, the evidence has overwhelmingly established that, instead of exercising the adequate powers they had to prevent waste, defendants had exercised those powers to effect an unauthorized, in fact, a prohibited, end, the keeping of Texas production down to the arbitrary, the artificial amount fixed as the quota of Texas oil, under agreements and arrangements by which the production from Texas and other states was to be limited and allocated so that each state could have a share in the general market for oil and its products, at a price which those interested in limiting production held out as reasonably to be expected, if the desired limitation were maintained. People's Petroleum Producers v. Smith, supra.

In addition to their reliance on the other statutory provisions in denunciation of waste, which we have considered in the other cases, defendants put forward here as a further support subdivision (k) of article 6014 of the amended statute (Acts 1932 [4th Called Sess.] c. 2, § 1, Vernon's Ann. Civ. St. art. 6014 subd. (k). This article in terms prohibits the "production, storage or transportation of crude petroleum oil or of natural gas in such manner, in such amount, or under such conditions as to constitute waste," and provides:

"The term 'waste' among other things shall specifically include: * * *

"(k) The production of crude petroleum, oil in excess of transportation or market facilities or reasonable market demand. The Commission is authorized to determine when such excess production exists or is imminent, and to ascertain the reasonable market demand. The Commission is expressly authorized to consider any or all of the above definitions in making rules, regulations or orders to prevent waste of oil or gas."

They declare that the provision is in substance the same as that contained in the Oklahoma statute, upheld in Champlin Refining Company v. Corp. Comm., 286 U. S. 210, 52 S. Ct. 559, 76 L. Ed. 1062. They argue that there is no substance in the point that, because of the different legal theories as to ownership of oil in place in the two jurisdictions, regulations against waste, valid in Oklahoma, are invalid in Texas.

■ We agree with defendants. In People's Petroleum Producers v. Smith (D. C.) 1 F. Supp. 361; People's Pet Producers v. Sterling (D. C.) 60 F.(2d) 1041, and cases cited, we have definitely said so as to underground waste. No reason presents itself to us for thinking that the Legislature of Texas has less power to prevent waste overground than it has to prevent it underground. Nor do we have any doubt that the enactment of subdivision (k) was intended to, or that it did, fully empower the commission to prevent such excess production beyond transportation and market facilities as would result in the physical waste of the oil by evaporation or otherwise, or the energy by which it is brought to the surface and saved. At the same time we are equally without doubt that the Legislature did not intend, by that subdivision, to authorize, that it has not authorized, the Railroad Commission to limit the production of oil from Texas to any figure arrived at either arbitrarily, or by arrange-

ment or agreement, as a part of a scheme of controlling production to control prices. Whether the Legislature under the state and Federal Constitutions could confer such authority upon the commission we are not now called upon to say. That question is not before us. What we do find is that nothing in subdivision (k), nor in any other provision of the act as it now stands, purports to confer such authority upon the commission, and certainly, without such authority having been definitely conferred, the commission may not exercise it.

We return again to the controlling question in this case, whether under the evidence in it, conceding the power of the commission to act to prevent waste, we can say that reasonable minds cannot find in the orders challenged any reasonable relation between them and the power conferred.

Plaintiffs vigorously press as grounds for relief the granting of the stripping permits by the commission, since in effect, authorized by the Legislature, the wasteful conditions attending the production in many of the wells in the field, of small amounts of oil by the use of huge amounts of gas. They urge these conditions as pointing their claim that the commission's order limiting their production while the gas which they might utilize is being otherwise wasted by others is confiscatory. They assert that in the face of the inevitable loss of gas pressure through these wasteful uses it is not reasonable to limit plaintiffs in the amount of oil they can produce with a reasonable gas-oil ratio. Defendants, countering these contentions, assert that, while it is true that the field is in a very general sense one gas reservoir, it is also true that for practical purposes the commission must administer the field in its separate parts, that it has in the exercise of its judgment done so, and that the evidence has not overthrown the prima facie validity of its actions and orders.

Complaint is also made of the fact that some of the wells where water damage danger is present are being allowed a greater amount of their potential than some of plaintiffs' wells. Defendants counter that the proof that these are small wells, and, in order to save them from water destruction, it is necessary to allow them to produce at a fuller flow than some of the others, presents a sufficient basis for making the distinction to justify the commission's action; and that, besides, plaintiffs may not complain of the order in this respect, for the record shows that plaintiffs, too, have wells of the same kind, and there is no proof that this phase of the orders has resulted in any injury to plaintiffs. They say that it is not every inequality in the administrative handling of a difficult situation like this which strikes administrative action down; that if in general the proof shows that the orders are not contrary to reason and fair dealing, slight and immaterial inequalities in their operation, such as this, will not strike them down.

■ We agree with defendants' views. Impressed as we are with the strength of plaintiffs' contention, and inclined as we might be to hold that upon the very clear, vigorous, and convincing affidavits which they have furnished the preponderance of the evidence is with them on the issue that the best, the most reasonable way to prevent waste in that field, in view of all the conditions there, would be to produce each well at its proper gas-oil ratio, abandoning all attempts at proration or ratable taking, it must be kept in mind that the case is not before us for trial de novo of that issue on the preponderance of the evidence. The issue before us is one of a claimed confiscation through arbitrary and unreasonable orders. In reaching our conclusion upon that issue we are only authorized, we are only trying, to determine whether the evidence is such as that we must say that reasonable minds, charged with the duty of protecting the state's natural resources in that field, could not reasonably have reached the conclusion which the commission reached, that the order it entered would have at least some effect to fairly prevent waste.

Looking at the case in that light, we are clear that we cannot say that the evidence establishes that reasonable minds must conclude that the commission's order is, as to plaintiffs, arbitrary or excessive, without reasonable relation to the prevention in a reasonable way, of waste, and therefore confiscatory, in violation of their constitutional rights. On the contrary, we are clear that the evidence has not overcome the presumption of validity attending the commission's orders. In the light of that presumption, and of the proof that the order in the amount fixed for the field, and in the allocation of it, is not excessive, unreasonable, or unfair as to plaintiffs, we think we are bound to find, from the evidence upon the issue before us, not that the orders of the commission are arbitrary, excessive, and irrational, and therefore confiscatory, but that, whether in our opinion wise or unwise, they represent an exercise, neither unreasonable

nor arbitrary, of the judgment and discretion of the commission in the discharge of the difficult administrative duties which the statute has imposed upon them, and that they are not subject to be enjoined.

A decree refusing the injunction and dismissing the bill may be presented to the District Judge for allowance and entry.