**PEOPLE'S PETROLEUM PRODUCERS, Inc.,
v. SMITH et al., and six other cases.**

**Nos. 386, 392–395, 408, 432.**

District Court, E. D. Texas, Tyler Division.
Oct. 24, 1932.

Byron A. Irwin, of Shreveport, La., Morgan, Culton, Morgan & Britain, of Amarillo, Tex., Saye, Smead & Saye, of Longview, Tex., and T. L. Wynne, of Athens, Tex., for plaintiffs.

Fred Upchurch and Maurice Cheek, Asst. Attys. Gen., and R. E. Hardwicke, of Fort Worth, Tex., for defendants.

Before HUTCHESON, Circuit Judge, and GRUBB and BRYANT, District Judges.

HUTCHESON, Circuit Judge.

At a former hearing of these causes [People's Petroleum Producers, Inc., v. Sterling (D. C.) 60 F.(2d) 1041], we denied the temporary injunction. The evidence, however, of the enormous and constantly increasing disproportion between the allowed and the potential production in the East Texas field, of its apportionment equally per well, regardless of capacity; of the powerful and unremitting pressure of the oil industry as a whole to limit the production of crude oil in Texas to the quota fixed by agreement to equal the demand for refined products which the market could absorb, and of the complacent, if not compliant, attitude of the commission toward this pressure and demand, caused us grave misgivings as to the correctness of our conclusion that, upon the record they made, plaintiffs had not shown sufficiently to overcome their prima facies that the orders were unreasonable, drastic, and oppressive as to them. That some other plan of regulated production in the field bringing about reasonable withdrawals of a considerably larger amount upon the basis of potential rather than per well would accomplish the permissible purpose of preventing physical waste without trenching upon the forbidden one of limiting production to market demand. Because of these misgivings, however, we deferred decision on the merits until in the light of a full disclosure of field conditions it could be determined justly in a final way whether the orders complained of were in fact valid conservational orders as claimed by defendants, or invalid and oppressive attempts to limit production as claimed by plaintiffs. People's Petroleum Producers, Inc., v. Sterling (D. C.) 60 F. (2d) 1041.

Thereafter, at a hearing held for the purpose of fixing new allowables for the Texas fields, the commission, over the protest and against the opinion of its advisers, and without any supporting evidence being offered, increased the East Texas allowable from 325,000 to 375,000 barrels per day, offsetting the increase in that field, however, by a reduction of substantially the amount of the increase spread over the other Texas fields. The allowable for East Texas it arbitrarily apportioned as before equally per well

among the more than 8,000 producing wells in that field, in entire disregard of the differences as to each well in productive capacity, situation on the structure, thickness, and character as to richness and yield of the underlying sands and proximity to water. Apparently designed to placate protestants in the East Texas field who were claiming that the program of restriction was bearing too hardly on that field, and not hardly enough on other fields, the action pleased no one. Neither the industry, which had been pressing for still further reductions in East Texas, and which vigorously condemned the increase, nor, because of the smallness of the increase, the contesting producers. By amended complaints filed against the orders, plaintiffs, persisting in the claim made on the former hearing that, by fixing a top allowable for the field as a whole, no matter how many wells were drilled, and arbitrarily apportioning it equally on a per well basis, in disregard of the differences in capacity and in field location of the wells, and of the grossly inequitable result of such apportionment, they neither are nor were intended to be conservation orders to prevent physical waste of natural resources, but economic orders to keep the supply of Texas crude oil within the compass of the existing demand for it, again asserted them to be invalid. Exertions of power forbidden by statute to the commission, or, if generally within the authorization, such excessive and unreasonable exercise of the power they purport to execute that, transcending public necessity, they assume the character of a mere arbitrary fiat. People's Petroleum Producers, Inc., v. Sterling, supra.

Defendants joining issue, the causes stood for trial together as one cause, the parties agreeing that each presented substantially the same questions of law and fact, and that the same decree should be entered in each.

Upon the issues thus joined, plaintiffs and defendants offered a mass of testimony, both fact and opinion, as to the nature, character, and extent of the field; of the oil-bearing sands, the edge and bottom water; the gas free and in solution; and whether the oil comes to the wells water driven or gas borne. The reservoir content; its possible and probable yield, and the best methods to obtain the largest yield; the causes of waste, and methods to prevent it, and how these are affected by present and proposed methods of regulation; to field conditions generally and as regards plaintiffs' wells; the relation between plaintiffs' wells and other wells in the field;

and the relation which the commission's orders bear to the prevention of waste in, and ultimate recovery from, the field generally and from plaintiffs' wells—were testified to. Factual data as to physical conditions in the East Texas field disclosed by official core records from many wells, and tests made there, were interpreted, supplemented, and theorized upon in the testimony of witnesses who had had practical or theoretical experience, or both, in that field. This testimony, supplementing that produced on the former hearing, presents in a full, complete, and final way the case on the facts for plaintiffs, and for defendants.

We have repeatedly, and without varying, held that the state may, in the interest of the conservation of its natural resources, provide by legislation within constitutional limits for the regulation of the drilling for, the production and the marketing of, oil to prevent waste. That it may constitute the commission statutory agent of the state, and may delegate to it authority to make within the limits of the grant of power just and equitable rules and regulations to effect these ends. We have also held that, in the act of appointment, the Legislature has strictly defined and limited the powers of the commission. MacMillan v. Railroad Commission (D. C.) 51 F.(2d) 400, 404; F. C. Henderson, Inc., v. Railroad Commission (D. C.) 56 F.(2d) 218; Constantin v. Smith (D. C.) 57 F.(2d) 227. In People's Petroleum Producers, Inc., v. Sterling (D. C.) 60 F.(2d) 1041, we carefully examined the statutory provisions against waste contained in the present statutes (Vernon's Ann. Civ. St. Tex. art. 6014, 6049c), which are set out in a note to that opinion, and found nothing in them which contemplated, required, or permitted either unreasonable or unjust restrictions upon production. We found, upon the contrary, that, while allowing the commission to make orders prorating production from a pool if necessary to prevent waste, they in terms required the apportionment to be made among the wells as the facts justly and equitably required. We accordingly found the statutes valid against attack. No case has been called to our attention, and we have found none, which requires modification of these views. We again find the statutes valid. It remains only to inquire whether, tested by the principles announced in those cases, and particularly in the last case referred to, a case is made out here entitling plaintiffs to relief. Whether the orders transcend the powers granted to the commission, be-

cause, contrary to the statutory prohibition, they are designed and effective to prevent economic waste by limiting the production of oil to equal the existing market demand, or, though designed to prevent physical waste, they operate unjustly and inequitably, because discriminatory, or excessively, because beyond what the public necessity requires.

The facts are without conflict; a brief summary of them will suffice. The conflicts arise entirely from the contrary theories advanced by the experts on each side in support of their respective contentions as to the effect on physical waste of present and proposed methods of controlled production. On the part of plaintiffs, it is contended that the orders, by their unreasonable restriction on production, both in the matter of limited amount, the method of distribution, and the disregard of gas oil ratio, create, they do not prevent, waste; on the part of defendants that, by utilizing the water drive, they do. The rate of withdrawal of the oil, the rate of its replacement by water, and the effect it is having and will have on ultimate recovery, are matters on which there is great conflict of opinion. The commission's experts asserting the field to be water driven, and that it should be produced so as to maintain a continuous follow up of the water, contend that the present restrictions produce that result. Plaintiffs' witnesses testifying that the oil is gas driven, and that no such orderly and continuous follow up of the water as defendants' witnesses speak of is necessary, or is or can be maintained, declare that the present method not only greatly injures plaintiffs, but, if continued, will cause great waste and loss in the field. It is here, as to the production methods most suitable to prevent waste, that the theorizing opinions of the witnesses differ most radically. In fact, so radical are their differences, and so contrary their opinions, so voluble, so volatile are most of the witnesses in advancing them, and so equal are they all in cocksureness, that form of knowing which easily mistakes certitude for certainty, that, if we assume, as we suppose on this record we should, them all to have equal theoretical knowledge and an equal absence of intention to deceive, the theories as such might best be held to counterbalance, leaving the question of the validity of the orders to be determined, not upon disputed theories, but by a consideration of the physical facts and their admitted consequences, and the common sense conclusions which that consideration compels. For, though we are of

the opinion that the theories advanced by the defendants' witnesses to support the commission's orders, coercively drastic as they are, even if the theories are sound, and ruinously so if they are unsound, are completely overthrown as theories by the testimony of plaintiffs' theorists, we think that too little is definitely known about these theories, and there is too large a body of undisputed controlling physical facts to permit opinion evidence to determine, either before the commission or us, the real and substantial rights here in question.

The East Texas oil field is 4 or 5 miles in width, 35 to 40 miles in length. Underlying its area of 120,000 acres is a great reservoir containing, it is estimated, some 6,000,000,-000 barrels of oil. All agree that less than 50 per cent, the estimates varying from 35 to 40 per cent., of this oil is recoverable by any method now known. So far 200,000,000 barrels have been withdrawn. All agree that close spacing of wells and some system of ratable production which will best utilize the propulsive and lifting energy stored there will give the greatest yield. All agree that the rules enforced by the commission require wide spacing, prevent ratable taking, and have the immediate, obvious, and, plaintiffs say, the sole tendency and effect of restricting production from the field. On the west side of the field is "edge water"; underlying the west half is "bottom water." No water underlies the east half. Slowly but perceptibly water is rising in the west part of the field. The Commission's experts are of the opinion that the water is replacing the oil substantially as withdrawn. Plaintiffs' witnesses are of a contrary opinion. They say that the water is lagging far behind, and that only 60,000,000 barrels have come in. All agree that within time every barrel taken out will be replaced by water, regardless of what method of production is used. Upon the issue that the orders look to economic, rather than physical, ends, plaintiffs proved by testimony and charts the relation between the supply and the price of crude and refined oil products.

Complainants' wells are nearly in the middle of the field, with oil saturated sands of the maximum thickness, but no water underlying, and they can produce large quantities of oil without waste. The oil-producing sands to the east of plaintiffs' property are of continually decreasing thickness, pinching out to nothing on the east edge of the field. None of the wells lying between plaintiffs' property and the eastern edge of the field

are capable of producing nearly as much oil as plaintiffs' wells, unless, by artificial methods of restriction such as the commission is now requiring, plaintiffs' production and that of others similarly situated is cut down for their benefit. The potential capacity of the eight thousand or more wells in the field varies from 200 barrels and less per day in some to 30,000 barrels in others. The wells having the largest potential capacity will naturally, if left alone, produce the greatest amount of oil. If the field is produced in an orderly manner, and as near ratably as may be, each person withdrawing oil underlying his land, and that which can be brought to his wells by proper production methods, each well will produce in accordance with the advantage of its situation. Whereas, if the present condition is maintained, plaintiffs will lose oil to which they are entitled to the wells on the east, and, long prior to the exhaustion of the oil and gas in the reservoir, the rise in the water will saturate plaintiffs' wells, drowning them out, and the sands lying to the east will produce the oil which has been driven from plaintiffs' lands to them. The evidence is conclusive that the commission has never made experiments, tests, or inquiries to ascertain the greatest amount of oil which each producer may take from his wells without injury to the field, and that it has never encouraged, nor indeed permitted, such inquiry or test as, in carrying out the legislative policy of supervising production to prevent physical waste, it ought to have done. On the contrary, it has prevented such tests.

It is further conclusive that the allowable has always been fixed, either finally or tentatively, at the figure which will keep production in Texas within the amount fixed by agreement of the Oil States Advisory Committee and those working with it, or, as one of the witnesses, Roeser, puts it, "the amount the market can absorb," and it has been only to support this fixation that opinion evidence has been marshaled post hoc in support of the claim that the allowable, as fixed, will prevent waste. This evidence, in the form of speculative theories changing from time to time, and vigorously challenged as unsound, does not, in our opinion, give the claim even the appearance of verisimilitude.

Plaintiffs say that this is the MacMillan Case again, greatly strengthened; that the evidence here, even more than it did there, compels the conclusion that the commission is undertaking, not to prevent physical waste, but to limit production to demand; that here the action is more flagrantly illegal and oppressive because there the prohibition which we found ignored was implied, here it is expressed; that there the theories behind which the commission masked its forbidden purposes were still unexploded theories, here the evidence entirely discredits and explodes them. They say, further, that if, notwithstanding the case upon the facts in testimony, and those of which the court takes judicial knowledge, make plain to the court what all men know, that the commission has never wavered from its steady purpose to do in the interest of oil stabilization the things forbidden to it, the court is still of the opinion that it may not find the purpose except in the operation and the effect of the act, the testimony compels the finding that the commission's orders have no real relation to the prevention of physical waste, but, on the contrary, tend to cause it. That, if it be considered that the orders have some slight tendency to prevent waste, this tendency is so slight and is accomplished at the price of such drastic, excessive, and unnecessary restriction upon the right of private use, that the orders must be held to be confiscatory, as mere arbitrary fiats. And finally, that in any event the apportionment of the production equally per well, instead of in accordance with each well's potential capacity, is so patently inequitable, unjust, and confiscatory, and so directly in the teeth of the statute, that the orders may not stand. Plaintiffs say, in short, that the commission is "running the public interest argument into the ground" by in effect "taking over the entire management of plaintiffs' properties and running them at the expense of the owner" (Wolff Packing Co. v. Court of Industrial Relations, 262 U. S. 539, 43 S. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280), and this not in the interest of the general public, as the Legislature understood and declared it, but as that interest has been interpreted by that part of the public which, desiring oil stabilization on the basis of higher prices for both crude oil and its refined products, wants and will have limited production in Texas and elsewhere, and that against such unauthorized action, no matter how wise and benevolent in purpose it may intrinsically be, plaintiffs should have their injunction.

In considering the evidence in this case, we have not been at all unmindful of the fact, constantly pressed upon our attention throughout this long controversy, that, though the Legislature has declared that "the Commission shall not have power to attempt by order, or otherwise, directly or indirectly, to limit the production of oil to equal the ex-

isting market demand for oil; and that power is expressly withheld from the Commission" (Vernon's Ann. Civ. St. art. 6014), there is a large body of opinion, shared in to some extent by at least some of the members of the commission (MacMillan and Constantin Cases, supra), that it would be a most desirable thing if the commission, within the limits of the law, could accomplish what the Legislature has forbidden, and that there are many who conscientiously believe that, if the restraining hand of the commission is withheld from keeping supply within the compass of demand, wide open and flush production, with resulting waste both economic and physical, will ensue. Nor have we been unmindful of the counter contention, that the commission must be most rigidly held to the legislative policy which the statute declares, not only because that policy is consistent with the long-established policy of the state toward artificial price raising, indeed, with the genius of its people, but because, if the attention of the commission can be entirely distracted from limiting the supply of oil to market demand and centered upon a real effort to ascertain the sources and causes of physical waste, with the idea of instituting regulations designed to assist operators in preventing it, and not, as now, to taking over from them the management of the field, the enlightened self-interest of the producers in East Texas can be counted upon to devise ways and means of obtaining the greatest ultimate yield from it.

Considerations of this kind, however, may be entertained by us only as they throw light upon the motives, the actions, the testimony, and the contentions which we are to review. They may not, except in this limited way, influence or guide our decision. For in a controversy of this kind between one who owns property by title which carries the right to use it, and a regulating body undertaking to impose limits on that use, the statutes themselves being valid, we have only one inquiry, whether under the facts the orders entered are within the grant of power.

■ We have carefully considered the evidence in this case, illumined as it is by the long record, the history of which the cases cited supra give of the settled purpose, the achieved result, of controlling the supply of crude oil to keep it within market demand, and we think it cannot be reasonably doubted that the orders are void as directly in the face of legislative prohibition.

We find no support whatever in the evidence for the view that the amount of the allowable was fixed upon a real and primary consideration of, or is supported by, any reasonable or credible evidence that it will, or will tend to, prevent physical waste. On the contrary, we think that no reasonable mind could believe or conclude that the orders as entered were either designed to, or do, have any real relation to the public necessity to conserve oil against physical waste. We therefore find here, as we did in the MacMillan Case, supra, that, "under the thinly veiled pretense of going about to prevent physical waste the commission has, in co-operation with persons interested in raising and maintaining prices of oil and its refined products, set on foot a plan which, seated in a desire to bring supply within the compass of demand, derives its impulse and spring from, and finds its scope and its extent in the attempt to control the delicate adjustment of market supply and demand, in order to bring and keep oil prices up," and here, as there, that orders so entered may not stand.

Further, if we disregard the statutory prohibition against restricting supply to "equal existing market demand," we think it equally plain that plaintiffs are entitled to relief. For, enacted not with an eye single to fairly exert admitted constitutional power to regulate the use of private property while it permits the full use consistent with such regulation, but with an eye evil, because it has looked too much on the forbidden thing, keeping supply within demand (Constantin v. Smith, supra, Yick Wo v. Hopkins, 118 U. S. 371, 6 S. Ct. 1064, 30 L. Ed. 220), the rules have been entered and are being enforced in such fashion as to subject plaintiffs' property to a confiscatory control. This control, transcending public necessity, has exerted the power granted beyond the necessities of the case. It has arbitrarily and without adequate grounds limited the total production of the field far below any amount which the evidence fairly shows the interest of the owners, consistent with public necessity, permits. In direct contravention of the statute, instead of justly and equitably distributing the reduction ordered, it has, through its per well requirement, so arbitrarily, unjustly, and in a confiscatory way distributed it, as that it will inevitably take the oil of plaintiffs, situated as they are most favorably on the structure, to give it to others not so favorably situated.

Plaintiffs may prepare their decree, and, giving notice of time and place to counsel for the commission, present it to the District Judge for settlement and entry.