**AMAZON PETROLEUM CORPORATION v.
RAILROAD COMMISSION OF
TEXAS et al.**

No. 652.

District Court, E. D. Texas, Tyler Division.
Feb. 12, 1934.

See, also (D. C.) 5 F. Supp. 639.

Saye, Smead & Saye, of Longview, Tex., F. W. Fischer, of Tyler, Tex., and W. Edward Lee, of Longview, Tex., for plaintiff.

James V. Allred, Atty. Gen., for defendant Railroad Commission.

Charles I. Francis and Douglas Arant, Sp. Assts. to the Atty. Gen., for defendants Ryan and others.

Before HUTCHESON, Circuit Judge, and KENNERLY and BRYANT, District Judges.

634

HUTCHESON, Circuit Judge.

Plaintiffs, owners and operators of oil wells in East Texas, to prevent what they alleged to be unconstitutional, illegal, and confiscatory penalties under state statutes, brought these suits in the Eastern District of Texas against the members of the Railroad Commission and their agents, the Attorney General of Texas, and district and county attorneys.- Specifically invoking the Fourteenth Amendment, they sought injunctive relief, interlocutory and final, to restrain the enforcement against them of the orders of the Railroad Commission limiting their production of oil.

In addition to this cause of action, they joined in the suits separate and distinct causes of action, and sought injunctive relief, interlocutory and final, against Ryan, Marshall, Bennett, and Baer, as agents of the federal government, to restrain them from enforcing against plaintiffs pretended but illegal, as without constitutional sanction, rules and regulations promulgated under the National Industrial Recovery Act (48 Stat. 195), and from exacting of and enforcing against them the drastic penalties provided for disobedience.

It plainly appearing that the first cause of action presented a case for three judges, the District Judge called two judges to his assistance and set the hearing on the application for injunction on both causes of action for the same time. Upon assembling, the statutory court in limine suggested its want of jurisdiction over the cause of action against the federal defendants as not within 28 USCA § 380, and that that cause of action was one for the consideration of the District Judge. Thereupon all parties desiring the applications to be heard and determined as to both causes of action at this time, it was in open court stated and agreed to by all parties and the judges consenting, made matter of record, that each cause should be regarded as submitted to and to be decided by the tribunal having jurisdiction of it. As the hearing advanced, it was further stipulated of record that the suits be submitted on`the evidence taken at this hearing, both on the application for interlocutory injunction and on the merits. So submitted, they stand before us for disposition.

 Disposing first, as we must, of the question of jurisdiction, we think it plain that each suit asserts two wholly separate and distinct causes of action. Of one of these actions, that against the state officers, we have jurisdiction. We are without jurisdiction of the other. But for the agreements submitting it to the District Judge alone, we should be obliged to dismiss it. Horton Mfg. Co. v. Hardy Light Co. (Tex. Civ. App.) 294 S. W. 320. Under that agreement, instead of dismissing it, we are directing its severance for submission, under such repleading in it, if any, as may be deemed necessary, to the District Judge as a separate and independent suit. We turn now to the cause of action before us for decision.

We find that it is, in its general nature and aspects, another of the attempts we have so often had to deal with to obtain injunctive relief against the regulation by the commission of production from wells in the East Texas oil field. Plaintiffs vigorously insist that this case is the same in its facts, and is ruled by the law, of those cases in which we have heretofore granted injunctions, specifically the MacMillan and the People's Cases. Defendants vigorously deny this, asserting that the case is rather the same in fact and in principle as those in which injunctive relief has been denied.

Plaintiffs, in addition to their attack on the orders as invalid, attack the statutes as well as our decisions upholding those statutes (Vernon's Ann. Civ. St. Tex. arts. 6014, 6049c). They also maintain that those cases in which we have refused injunctions have not been well decided. The defendants in turn argue that we have done well when we have sustained the statutes and orders of the commission; ill, when we have done otherwise.

Since we entertain the belief that all of our decisions have been consistent in principle, and that the differences in the particular results have been due to material differences in fact and law between the cases, it may be well, before proceeding to decide this one, to review those cases to determine what was actually decided by them.

 In each of the cases we have sustained the statutes as a valid exercise of the powers of the state to control the manner of the taking of the state's natural resources in order to conserve them. We have been at the utmost pains to state and emphasize the statutory agency of the commission, and that its powers must be found in the statutes it purports to execute. In each case we have definitely affirmed that the right of one whose business consists in the taking and depletion of oil and gas, the natural resources of this state, to carry on that depletion is not an absolute, but a qualified one, to be enjoyed

only in accordance with the reasonable restrictions the state may impose. In short, we have pointed out again and again that the business of taking and depleting natural resources may not be carried on except within the limitations and according to the regulations which the state may constitutionally prescribe. In not a single one of these cases did we find the statute unreasonable or invalid. In not a single one did we find the orders invalid because, though complying with the statute, they violated the Constitution. In each of the cases in which injunctions issued, we made it clear it was because we thought the orders had been entered in the teeth of statutes forbidding the commission's doing what it attempted to do. We were at pains in them all, we are at pains again, to make it clear that in our opinion the state, through the Legislature, has broad powers in conserving its natural resources of oil and gas, to regulate and control the business of producing and handling them, with the right to broadly delegate to the commission, as statutory agents, the administration of the regulation and control it decides upon.

█ In all of these cases we specifically disclaimed for the courts any administrative powers, and particularly any power to substitute for the administration of the commission, our own administrative views. In not a single one of the cases in which we refused to enjoin, did we do so because we felt that the orders represented good administrative practice. In not a single one of them in which we enjoined, did we do so because we felt they represented bad administrative practice. We granted or refused relief according to the view we took that the proof did or did not show sufficiently to overthrow the prima facie presumption of validity attending them, that the orders were, because beyond their powers, arbitrary and confiscatory; that is, that they were not in accord with, but in violation of, the statutory directions they were bound to carry out. Let us examine the cases.

In Henderson, Inc., v. Railroad Commission of Texas Case, 56 F.(2d) 218, we sustained the statute against a direct attack against it, as reasonable and valid. In MacMillan v. Railroad Commission of Texas Case, 51 F.(2d) 400, a successful attack upon the orders of the commission, we took pains to point out that we enjoined the orders not because we had found them in violation of constitutional provisions, but because we found them to be not conservation orders to prevent physical waste as the statute required them to be, but price-fixing orders to prevent economic waste in the face of a statute forbidding this.

In Constantin v. Smith, 57 F.(2d) 227, we swept aside the pretensions of the Governor that he could substitute military for constitutional government, could disregard the conservation statutes by supplanting them with regulations of his own, and could oust from the performance of its duty the commission, the conservation agents of the state. We reaffirmed that these were valid statutes of great public and private importance and concern by which all were bound. That the commission was duly authorized, as statutory agent, to enforce and administer them, and issuing an injunction against the Governor and the military, we declined to issue one against the ousted commission until it had had an opportunity to take up again its duty of administering these laws.

In People's Petroleum Producers v. Sterling Case, 60 F.(2d) 1041, we refused an interlocutory injunction against orders apportioning a 325,000-barrel allowable per well over the field for the reasons fully set out in the opinion, that the statutes were valid, that every reasonable presumption must be indulged that the commission's orders followed its statutory authority, and that plaintiffs had not offered sufficient evidence to rebut and overthrow these presumptions. This decision was rendered under a different statute and under different facts from those controlling the MacMillan Case. We there pointed out that whereas in the MacMillan Case the statute had neither authorized nor suggested that proration might be resorted to, or that fields might be treated as a whole, the amended statute required the commission to consider questions of waste present or imminent, from the standpoint of the field as a whole, and to prorate the amount decided upon as necessary to prevent waste in the field equitably among the owners, and that plaintiffs having made no proof that the statute had been violated in doing so, we must refuse the temporary injunction. In the People's Case on final hearing, People's Petroleum Producers v. Smith, 1 F. Supp. 361, after again reaffirming the validity of the statutes, we enjoined the orders fixing an allowable of 375,000 barrels because on the proof fully developed it was made to appear to us that the orders, instead of being in accordance with the statutes, were in their very teeth, first and mainly because instead of equitably apportioning the production among the well owners as the statute enjoined the commission to do, it arbitrarily apportioned the allowable on a per well

basis, though the proof overwhelmingly showed a difference of capacity between plaintiffs' wells and at least some of the others; (2) because we found that in direct violation of the statute then existing prohibiting the commission from prorating the field in accordance with market demand, its orders had been entered to do that very thing.

In the third People's Case, memorandum opinion unreported, the injunction was granted because, though it appeared that the statute had been amended to permit the commission to consider as an element of waste production in excess of market demand, it was admitted that the restricted production had been again, in the face of the statute and of the former injunction, apportioned not equitably among the wells, but arbitrarily per well.

The next suits submitted on application for interlocutory injunction at Fort Worth were unlike any of the others we had had. Some of the plaintiffs in them were complaining that the allowable was too high, some that it was too low, and some that it was not properly apportioned. Here it being shown that the commission had at last acted in obedience to the mandate of the statute and the injunction of the court to equitably prorate the allowable over the field in accordance with the different capacities of the wells, we denied the injunction from the bench without opinion.

In Danciger Oil & Refining Co. v. Smith, 4 F. Supp. 236, we denied the injunction, though we felt strongly enough to say so, that if the case were pending before us administratively we would be bound to find that plaintiffs had made a strong case in favor of their claim that other methods would more effectively carry out the statutory purpose and command. We did this because the order admittedly complied with the statute in apportioning the allowable equitably among the owners in the field, and because under the evidence in the case and the strong presumptions of validity attending the orders of the commission, especially in view of the impossibility of an exact administration of the statute, we could not find the order void as wholly unauthorized, unreasonable, and arbitrary.

In the Danciger Case, while section (k), the market demand section (Vernon's Ann. Civ. St. Tex. art. 6014, subd. (k), was adverted to, the order was not sustained on this section of the statute. We did not undertake to interpret market demand as there used, or to say how the powers granted under it should properly be exercised. We only said that section did undoubtedly authorize the commission to prevent actual waste of oil or gas from production in excess of market demand through inability, because of overproduction, to make use of and handle it, and that whatever other meaning might be given it, it could not reasonably be held that the Legislature had granted the commission power to arbitrarily fix, as the market demand for Texas oil, the amount set by those interested in obtaining and maintaining a price for oil as the amount necessary to that result.

Plaintiffs insist that, masking as conservation orders, the deliberate exertion of their powers as statutory agents of a great state, the orders here attacked are really shams. They are, say plaintiffs, not orders of the commission, but a weak and supine surrender to agents of the federal government of the state's powers over its natural resources, delegated to the commission, and to it alone, and therefore void and without effect. They say also that if in basing market demand for Texas on the evidence of consumer demand furnished it there was an attempted exercise here of authority, the exercise was not in accordance with the statute, for that speaks of market, not consumer, demand, as the Petroleum Codes do. Finally, they say that its allocation to East Texas of 400,000 barrels as a measure of physical waste prevention is also a sham.

Defendants insist that, in accepting as correctly reflecting the market demand for Texas the work and figures of the Bureau of Mines as the consumer demand already accepted by the Secretary of the Interior for allocation under the Petroleum Code, the commission has not abdicated its office, nor surrendered its function, but has availed itself, as it had a right to do, of the best information on the problem it had in hand. They say further that the distribution to and in East Texas of the 400,000 barrelage allotted there as a physical waste measure lies far short of confiscation, and well within the zone of reasonableness, within the limits of which the commission, as conservator of natural resources, has wide discretion in administering the field, and that though the court might feel that within those limits a larger amount could be authorized, it could not by injunction require it to be.

Defendants urge also that wholly apart from considerations of physical waste the orders as to plaintiffs are valid and should be sustained as market demand orders under section (k).

■ We entirely agree with plaintiffs that the laws of Texas charge the commission with the duty of conserving the natural resources of the state and that it may not, under any circumstances, delegate or surrender that function to another. We are bound also to agree with plaintiffs that the record of their proceedings exhibits more of supplicativeness and wavering and less of firmness and administrative vigor than might well be expected of them in the discharge of their great function as statutory agents of Texas for the conservation and protection, in the private and public interest, of the state's natural resources of oil and gas. The record shows, however, no more than that. It does not show either an attempt on the part of federal agents to dictate to and take over the functions of the commission, nor a surrender by it to such agents of its delegated authority.

Supporting their position that the orders are mere pretenses and subterfuges behind which the commission masks a surrender to dictation, plaintiffs recite again the long story of the struggles of those in the industry, who have believed in the restriction of production as necessary to prevent both physical and economic waste, with those who have believed in unlimited and free production, in a catch as catch can fashion, winner take all, and the side the commission has taken in that struggle.

■ Unfortunately for plaintiffs, the spirit of the times making for collectivism against individualism has so warred against their contentions that the march of the statute law, which stands with us for public opinion and within constitutional limits determines the public policy of the state, has been with the restrictionists, the market demandists. Standing in the earlier stages of this controversy, as we found in the People's Case, 1 F. Supp. 361, it was in the position of trying to accomplish ends which, desirable of accomplishment as they might be, the law did not permit, the commission stands now fully supported in its general aims by the statute which empowers it. Not only so; it finds itself receiving assistance in determining the facts upon which it makes its decisions, not as formerly from persons and unofficial bodies of persons interested in the oil industry and bent on maintaining their private views of its conduct and control, but from officers of the government under federal laws which, if not effective·for constitutional limitations, as to which, since the matter is not before us, we have no opinion, certainly have the author-ity and support of the executive and legislative branches of the general government.

■ We therefore reject as wholly untenable the reiterated contention, of which the plaintiffs' brief is all too full, that the action of the President of the United States through the Secretary of the Interior, the Federal Oil Administrator, in furnishing the commission information obtained from the Bureau of Mines as evidence of Texas market demand, and in undertaking to urge upon the commission that it reach the same conclusion the Secretary did, and adopt regulations accordingly, and the following action of the commission, can be said to be the result of, or reprehensible as, a conspiracy of sinister interests. We reject especially the point of view that the mere fact that a state agency like the commission receives assistance or suggestions from an agency of the federal government, is evidence of an abdication of state function making the actions of the commission void.

Plaintiffs' second position, that "consumer demand," as used in the Petroleum Code, and "market demand," as used in the Texas statutes, are not the same, and that evidence of one is no evidence at all, and certainly not sufficient evidence of the other, may not be so easily disposed of.

The vital differences in the connotation between "consumer demand" and "market demand" are emphasized and clarified by the very interesting and informative affidavit of J. E. Pogue on operating the oil industry under the quota system, the method followed, as his affidavit says, by the National Administration.[1] (Record, pp. 1674–1680.) He

[1] "During the practice of proration prior to the adoption of the Petroleum Code, state quotas were determined by the various state regulatory bodies separately on the basis of what refiners and other purchasers of crude oil nominated to be their several requirements. This procedure inevitably and invariably led to an overproduction of gasoline, because of the fact that existing refining capacity is in excess of the requirements of the market. This fault was recognized and a correction sought in the Petroleum Code as per memorandum of the writer, July 27, 1933 (Record, pp. 1675, 1676), in his capacity as Deputy Economist for the National Administration. * * * In view of these and similar considerations the Petroleum Code specifies that crude oil production shall be balanced with the consumer demand for petroleum products, and *not* with the buyers demand for crude oil. This definition is important, for it corrects a flaw in the technique of proration which has heretofore proved costly. The distinction between buyers demand and consumers demand for products should be clearly perceived, for confusion on this point can readily defeat the objectives of the Petroleum Code, which include those stabilizing the industry and preventing waste." (Record, pp. 1676, 1677.)

makes it clear that "consumer demand," as the code uses it and as the Bureau of Mines fixes it, is not market demand in the ordinary sense of buyers' demand at the well for crude oil. It is the demand of the ultimate consumer for the products of the crude.

"The State of Texas is one of those states that have more oil than it needs to satisfy the demand for crude oil and products within its border. In addition, Texas is so situated as to location, water transportation, etc., as to assume a commanding position."[2]

When, then, the commission charged by a statute enacted in 1932 with ascertaining the reasonable market demand for Texas crude fixes it not at buyers' demand, that is, what those wishing to buy crude are willing and anxious to take from Texas, but at ultimate consumer demand under the system used in the Petroleum Code to control the operations of the petroleum industry under the quota system, it may well be doubted by those who regard this nation as a union, and not a "unity" of states, whether such finding is not wholly unresponsive to the power at present conferred. We pass the question, however, as we do defendants' third position, that the orders are valid as market demand orders under the market demand section as it is now written, as unnecessary to determine for reasons which will later appear. We pass also, without specific comment at this time, to examine them generally later, plaintiffs' and defendants' positions on the physical waste aspects of the order.

■ Examining the record in the light of all of these contentions, and of our prior decisions, we find ourselves unable to agree with plaintiffs that they have made out a case for injunction. We think it clear that, questions of market demand aside, which because we decide the case on other grounds we do not determine, the order stands on the distribution to and in East Texas on considerations of physical waste. Its prima facies are not only unrebutted by the testimony, but they are reinforced by the great mass of it offered in its support, of experiments and tests made in the field, and of conclusions reached by engineers of at least equal standing with those offered by plaintiffs. The testimony

---

[2] Affidavit of Fred Van Covern, Record, p. 1690. It proceeds: "But in a unity of states, forty-eight states and the District of Columbia—nineteen of which produce oil, no single state can presume the right to produce the requirements of the forty-eight, nor a barrel more than its proper portion, but it can, and justly so, demand the right to produce the requirements of its natural markets."

taken in the cases we tried in 1932 fully developed the then known conditions in the East Texas field, and those assumed in the opinions of the engineers based on experiments and tests up to that time made there. Since then many experiments and tests have been made under field and under laboratory conditions, many opinions have been tested and tried, and some found wanting. Everybody admits freely now what was only grudgingly admitted then, that restriction is essential in the production of that field, and that a free and unlimited production may not be tolerated. The Legislature has not only repealed the statute against the consideration of market demand, but has enjoined upon the commission to determine and take this into account. The statutes as they now exist authorizing the restriction of production upon orders entered as these purport on their face to have been, upon the consideration of those things and those only which the State enjoined the commission to consider. Unless the proof overwhelms that the apparent compliance with the statute is not real, but pretended, that the orders are arbitrary and confiscatory, an injunction against them on the ground that they restrict production too narrowly would be an unwarrantable interference with administrative discretion. We have held, we repeat that holding, that while the commission has the right to regulate production so as to prevent waste, and to reasonably restrict it to the point where waste will in its judgment be best prevented, it of course has no right to fix this at a point where it is manifest that regulation has ceased, and confiscation has begun. We enjoined in the People's Case, not because we thought the particular barrelage allowed was in itself confiscatory, but because the orders defied the statutes which they purported to execute, by refusing to apportion the limited production equitably, and by taking into consideration market demand, which they had been forbidden to do. Upon the statutes as they now exist, the commission has a wide range of discretion. Only when their actions pass those limits may courts interfere.

We have examined with the greatest care this mass of evidence, voluminous, ponderable, pretending to scientific accuracy, as to physical conditions in East Texas, and the relation of the restrictions to the prevention of waste there. We are impressed, but not aided, by the fact that scientific men of standing, integrity, and ability can so radically disagree. However much we may be disappointed in finding ourselves unable to determine

to what extent interest in the result makes for these differences of opinion, and to what extent the questions are insoluble, we do find ourselves so situated that we are bound to say that all this vast amount of evidence, submitted in favor of the commission's findings, is too ponderable to be brushed aside as no evidence at all. We find ourselves wholly unable to say that the conclusion the commission reached is not one which reasonable minds could entertain.

We are the more compelled to the conclusion that, in this state of the record, for us to interfere with the commission to set up an administration of the field by injunction would be not only beyond our powers, but greatly disastrous, when we consider that though all agree that a restriction to some extent is essential, those in the business and those who claim to know disagree so radically as to what that restriction should be. It is our duty to grant an injunction against state officers when the equities of the bill are plain, but only when they are. They are not plain here.

The injunction prayed for will be denied, and the bill dismissed.

BRYANT, District Judge (dissenting).

I find myself unable to agree with the conclusion reached in the majority opinion above. I agree with the interpretation and effect of prior decisions of the statutory courts as so ably set forth by the learned Circuit Judge. However, I cannot agree with the conclusions reached as to the facts. I think that the great preponderance of the credible evidence shows the same picture which has been presented before, and that it is shown in this hearing in clearer and more vivid detail than ever before, and that is, that the commission, instead of exercising the powers they have to prevent waste, they have, as has previously been stated, "exercised those powers to effect an unauthorized, in fact, a prohibited end, the keeping of Texas production down to the arbitrary, the artificial amount, fixed as the quota of Texas oil under agreements and arrangements by which the production from Texas and other States was to be limited and allocated so that each State could have a share in the general market for oil and its products at a price which those interested in limiting production held out as reasonably to be expected if the desired limitation were maintained." People's Petroleum Producers v. Smith, supra.