HENDERSON CO. v. THOMPSON et al.

No. 535.

District Court, W. D. Texas, Austin Division.
Oct. 24, 1935.

L. M. Fischer, of Amarillo, Tex., and F. W. Fischer, of Tyler, Tex., for complainant.

Wm. McCraw, Atty. Gen., and Archie B. Gray, Asst. Atty. Gen., for respondents.

Before HUTCHESON, Circuit Judge, and KENNERLY and McMILLAN, District Judges.

. McMILLAN, District Judge.

Complainant, a Maine corporation, by bill in equity complains of the members of the Railroad Commission and the Attorney General of the State of Texas, and seeks to enjoin the enforcement so far as it is concerned of House Bill 266, chapter 120, passed by the 44th Legislature, Regular Session 1935 (Vernon's Ann. Civ. St. Tex. art. 6008), and certain orders of the Railroad Commission purporting to have been made in pursuance thereof. The law and orders are attacked upon various constitutional grounds. The federal jurisdiction, both on account of diversity of citizenship and federal question, sufficiently appears. Jurisdiction in equity is also apparent. The case is one for a

three-judge court, and a hearing has been had before such court duly organized on application for preliminary injunction. The matter is now submitted on sworn amended bill and answer, various ex parte affidavits, and briefs.

Complainant is the owner and operator of a casing-head gasoline plant located in Hutchinson county, Tex., and is connected with twenty-one wells in the vicinity of that plant. Either by right of ownership or contract it has heretofore been receiving gas from those wells and extracting gasoline therefrom. Thereafter, under contract with Combined Carbon Company, it has been delivering the residue of that gas, less such as it used for plant operation, to said Carbon Company for the manufacture of carbon black.

The orders of the Railroad Commission now under attack attempt to classify complainant's wells as sweet and sour; fourteen of them being designated as sweet, and seven as sour. The purposes for which the sweet wells may be used are limited, with certain exceptions, practically to light and fuel; sour wells may still be used for the extraction of natural gasoline and the manufacture of carbon black.

Complainant attacks the statute and orders issued thereunder on the conventional constitutional grounds, asserting generally that they are confiscatory, unreasonable, and arbitrary, deprive it of its property without due process of law, and impair the obligation of existing contracts. It alleges further that it has and can obtain no market or use for its gas other than that market and use which is now forbidden; that the closing down of its wells will cause its gas to be drawn off by other parties having markets for gas and drawing from the same general reservoir; that the manufacture of carbon black gas is a necessary and useful thing and can be and is being accomplished without waste; that the classification of, and differentiation between, sweet and sour wells is unreasonable and without foundation in fact.

The respondents, while admitting many of complainant's fact allegations, disagree with the conclusions of law drawn therefrom and assert that the statute and orders of the commission are valid police regulations and have a reasonable relation to the conservation of the state's natural resources and prevention of waste; they deny complainant is suffering any irreparable injury by reason of the statute or orders such as to entitle it to an interlocutory injunction, and assert on the other hand that it has or can without loss obtain, for the time being, sufficient gas, both sweet and sour, to satisfy its requirements.

The facts adduced on the hearing by affidavits take such a wide range that it would be impracticable without unduly prolonging this opinion to set them out here. Generally speaking, the affidavits cover the kind and character of the gas reservoir in the Panhandle; the difference between sweet and sour gas; matters with regard to pressure; migration of gas, etc.—all of which has been fully set out and covered in the various other gas cases arising before this court and involving the Panhandle field. Also on complainant's part there is a strong showing as to the absence of waste in the operations of itself or its vendee, the Combined Carbon Company.

The complainant claims that it will need about 30,000,000 cubic feet of gas a day to fill its contract with the Combined Carbon Company. Under the orders of the Railroad Commission it seems to have that much gas available from the seven wells classified as sour. In addition to this 30,000,000 cubic feet, it claims that it needs for plant and lease operation an additional 8,000,000 feet which, according to its affidavits, under the orders of the commission it will be unable to get.

Respondents by affidavits assert complainant can obtain this gas from the fourteen wells classified as sweet, their proof tending to show that from these wells the allowable under the commission's orders will run somewhere between seven and eight million feet a day. This the complainant in part denies, asserting on the contrary that their contracts with regard to their sweet wells only allow them to use that gas for casing-head gasoline operation.

The parties have briefed and submitted the case at cross-purposes. Respondents have assumed as an absolute arbitrary proposition of law that the Legislature had the general absolute right under any circumstances or conditions to prohibit the use of gas for the making of carbon black. On that postulate they rest their case so far as the general validity of the statute and orders are concerned. Accordingly, they make no endeavor to establish as a factual proposition that the use of gas for making of carbon black is wasteful. They

content themselves with the bald proposition that the legislative fiat is sufficient to bind the court in that respect. The complainant, on the other hand, undertakes the burden of establishing that the manufacture of carbon black is not a wasteful use of its gas; that carbon black is one of the most necessary articles to-day known to commerce; that the gas is completely consumed in its manufacture; that the result accomplished by manufacturing carbon black is as useful and necessary as any other thing that could be accomplished by the burning of gas.

With the record in this attitude, the court is not content to pass upon the ultimate validity of this act of the Legislature on this application for a preliminary injunction. The right of the Legislature to regulate these various matters connected with the production of oil and gas, in so far as Texas is concerned, has always been hinged on the doctrine of conservation of natural resources and the prevention of waste. Amazon Petroleum Corporation v. Railroad Commission (D. C.) 5 F. Supp. 633; MacMillan v. Railroad Commission (D. C.) 51 F.(2d) 400; F. C. Henderson, Inc., v. Railroad Commission (D. C.) 56 F.(2d) 218; Danciger Oil & Ref. Co. v. Railroad Commission (Tex. Civ. App.) 49 S.W.(2d) 837, 842; Id., 122 Tex. 243, 56 S.W.(2d) 1075; People's Pet. Producers Co. v. Sterling (D. C.) 60 F.(2d) 1041; People's Pet. Producers Co. v. Smith (D. C.) 1 F. Supp. 361; Canadian River Gas Co. v. Terrell (D. C.) 4 F. Supp. 222. If the regulation has no reasonable relationship to these matters, then it constitutes an unreasonable interference with the rights of private property. We are unwilling at this time to hold that the mere legislative declaration that a certain use of gas is wasteful is conclusive, and are inclined, on the contrary, to the opinion that the fact question involved is justiciable.

However, it does not follow that because of these conclusions complainant is entitled to its interlocutory injunction as a matter of right. These preliminary injunctions do not issue as a matter of course. Coupled with a prima facie showing indicating that complainant will eventually be able to establish the invalidity of the orders attacked in the trial on the merits, there must be clear and strong showing of immediate and irreparable injury in event the enforcement of the orders attacked is not stayed. We are not at all convinced that the complainant has discharged that burden in this case.

Its secretary and general manager in his affidavit says that during the month when the bill was filed the carbon plant actually utilized a daily average of 27,426,000 cubic feet of gas; that the daily allowable from the seven wells classified as sour, less the gasoline content which is extracted, is now approximately 31,277,800 cubic feet, thus leaving almost 4,000,000 cubic feet over and above what the carbon plant was using in the month of July. There is a general statement in his affidavit that the affiant is informed that the future requirements of the Carbon Company will run its daily use up to 30,000,000 cubic feet a day, but there is nothing further than this general assertion to support that fact. It is perfectly obvious that so far as the carbon black phase of the matter is concerned complainant has, even under the orders attacked, more than enough gas to protect the situation with probably a surplus of several million cubic feet a day.

But complainant contends it has use for approximately an additional 8,000,000 cubic feet daily for plant and lease operations.

Respondents say in answer to this, by way of plea and affidavits, that complainant has under contract from its various other wells approximately 8,000,000 cubic feet per day which can be so used under the existing orders. The complainant denies this and says, on the contrary, that under its contracts this gas can only be used for the manufacture of casing-head gasoline. An inspection of one of those contracts, said to be typical, indicates that the method of payment agreed on between complainant and its vendees is by a determination of the proportionate part of the gasoline stripped from the gas. The contract expressly provides that it is subject to all legal rules and regulations now in force or which may thereafter be promulgated. There is no clear, express showing that complainant will not be able to obtain, either from that source by additional contract if necessary, or from other sources, the gas which it may need for plant and field operation. Furthermore, the statement as to this amount of gas needed for those purposes is merely the unsupported conclusion of the affiant, general manager, and no facts or detailed account is given with regard to, or of, the necessity which makes it imperative for

complainant to have this additional amount of gas.

Having all these matters in mind and giving due regard to the proper balancing of conveniences, it is the opinion of the court that the complainant has failed to establish that the present temporary enforcement of the orders complained of is causing or will, prior to the time that the case can be tried on its merits, cause, complainant any irreparable injury.

It follows that the preliminary injunction prayed for will be denied.