**CARR v. STRINGER.**

No. 14498.

Court of Civil Appeals of Texas.
Fort Worth.

April 30, 1943.

Rehearing Denied June 11, 1943.

———◆———

Bryan, Stone, Wade & Agerton and B. G. Mansell, all of Fort Worth, for appellant.

Pollard & Lawrence, of Tyler, for appellee.

SPEER, Justice.

By stipulations had at a pre-trial hearing in this cause, and by such pleadings as are contained in the transcript, A. P. Carr, as plaintiff, sued to recover $2,223.91, as oil payments for runs of oil held by Gulf Oil Corporation, to which we will refer as Gulf. Gulf did not claim the funds but impleaded Roy I. Tennant, Sr., J. D. Stringer and Liberty State Bank, a corporation, to which we will refer as Bank, asserting that the named parties were claiming an interest in the funds. Gulf, Tennant and the Bank all disclaimed any interest in the subject matter, and upon agreement of the parties were dismissed from the suit. Stringer filed a cross-action against Carr, by which he sought recovery of title to the funds, a quieting of his title to the lands and the royalty interest therein from which the oil had been taken, describing the land, and, in the alternative, to have an alleged parol agreement by Carr, made with Tennant, to convey the land and oil interest therein, specifically performed.

Trial was had on Stringer's cross-action against Carr and the latter's replication thereto. It is obvious that the issue before the court was as to which of the two, Stringer or Carr, did the money belong. And whether or not Stringer was entitled to have the contract between Carr and Tennant specifically enforced.

Stringer was the assignee of Tennant and was entitled to all that Tennant could have recovered had no conveyance been made to Stringer.

Upon a jury verdict on special issues, judgment was entered for Stringer and Carr has appealed.

By appropriate points, Carr contends that Stringer cannot enforce a parol agreement for the conveyance of land (an oil and gas overriding royalty) because of the statute of frauds and for the further reason that any such agreement as Stringer claims to have been made between Carr and Tennant was unenforceable because it involved the illegal practice of law by Tennant.

The evidence reveals that Carr had employed Tennant over a period of several months to procure permits from the Railroad Commission to drill oil wells as exceptions to Rule 37, on lands in East Texas Oil Field not involved here. That early in 1938, at Carr's request, Tennant procured from the Commission a permit for Carr to drill on a certain 1.53 acre tract known to all parties as the W. T. Carr lease. W. T. Carr was the father of A. P. Carr, but died and A. P. Carr had come into possession of the lease. A. P. Carr had a tract of 7.42 acres adjoining the W. T. Carr lease, the larger one known as "Ritchie A" lease; the two formed a rectangle of ten acres. Tennant was to receive for his services in procuring the permit to drill on the W. T. Carr lease a money consideration and an overriding royalty interest of ⅛th of ⅞ths.

It is contended by Carr that the contract was in violation of law, in that Tennant contracted to practice law, when not a licensed lawyer, in violation of Vernon's Ann. Penal Code, Article 430a, and the contract was therefore unenforceable. We do not believe that Tennant's acts in

procuring the permits from the Railroad Commission constituted practicing law, as defined by the Penal Code above referred to.

Insofar as applicable here, Article 430a, section 2, subdivision (a), defines the practice of law as applying to any person appearing in a representative capacity as an advocate or performing any act in connection with proceedings pending or prospective before a *court* or justice of the peace, or a body, board, committee, commission or officer constituted by law and having authority to take evidence in or settle or determine controversies *in the exercise of judicial power of the State.*

Section 3 of the Code cited prohibits corporations from practicing law, and after enumerating many things corporations may not do, concludes with this language: "Provided, that the foregoing shall not prevent a corporation, person or association of persons from employing an attorney or other agent or representative in regard to its own affairs in any hearing or investigation *before any administrative official or body."* (Emphasis ours.)

The amendment to the Constitution now known as section 2, Article 10, Vernon's Ann.St., did not by its terms create any agency or commission, it was not self-enacting, but empowered the Legislature to create such agencies, and clothe them with adequate power to effectuate the purposes set out in the Constitutional provisions. In obedience to the Constitutional mandate, the Legislature created an agency known as the Railroad Commission. City of Denison v. Municipal Gas Co., 117 Tex. 291, 3 S.W.2d 794. By statutory provisions found in Article 6023 et seq., R.C.S., Vernon's Ann.Civ.St. art. 6023 et seq., the Railroad Commission was assigned certain duties relating to railroads, the regulation and control of the oil and gas business, and even other duties. It was empowered to formulate its own rules of procedure while performing the assigned duties and powers.

■ Among other powers conferred, were those of determining how best to conserve the natural resources of the state in the production, use and waste of oil and gas. In arriving at how many wells should be drilled in a given area, it sets the application for a permit to be heard after ten days' notice to interested parties and then hears evidence pro and con before arriving at a conclusion as to whether or not the permit will be granted. These proceedings are similar in many respects to the means employed by courts. The Commission's functions have in this respect been held to be quasi judicial. Burgess v. American Rio Grande Land & Irr. Co., Tex.Civ.App., 295 S.W. 649, writ refused; Aransas Harbor Terminal R. Co. v. Taber, Tex.Com.App., 235 S.W. 841; Magnolia Petroleum Co. v. Railroad Comm., 128 Tex. 189, 96 S.W.2d 273.

Constitution Art. 5, § 1, provides that the judicial power of this state shall be vested in the particular courts there enumerated and further provides that the Legislature may establish such other courts as it may deem necessary, and shall prescribe the jurisdiction thereof.

The prohibition of the practice of the law by persons not so licensed is limited by Article 430a, P.C. to the presentation of and advocacy of rights before any body, board, committee, commission or officer authorized by law to settle or determine controversies "in the exercise of the judicial power of the State".

■ We have observed that the "judicial power of the State" is vested by the Constitution in named courts and such other *courts* as the Legislature shall create and prescribe their jurisdictions. Certainly in the creation of the Railroad Commission the Legislature did not attempt to create any other court than those named in the Constitution. The fact that the Commission employs some of the most attractive and orderly means of arriving at its conclusions in the administration of its duties cannot be construed to mean that it is a court within the contemplation of the Constitution.

■■ We think the Railroad Commission is an administrative body or board, and although it is empowered to summon witnesses and hear evidence before passing upon administrative matters, such acts are not "in the exercise of the judicial power". If we are correct in this, then by section 3 of Art. 430a, above quoted, any layman may appear before it in his own behalf or for another without violating the Penal Code.

By reference to 33 Words and Phrases, Perm.Ed., p. 193, under the caption "Practice of Law", we find that several of the other States have prohibited the practice of law by persons not legally licensed to do so, but in each of those states a different

procedure is adopted to that of Texas. There, they rely upon contempt proceedings against the offender. In those jurisdictions the practice of law is deemed to relate solely to the Judicial department of the state, and that what acts constitute the practice of law are to be determined by the Judiciary; that such right to practice is by virtue of a permit from the Judiciary, and to practice without such permit is contempt of the Judiciary. Doubt is expressed in some of the states that the Legislature can control the practice of law, since it is an encroachment by the Legislative department upon the powers of the Judicial department. That question is not before us, nor do we express any opinion on it. It is our statutory provision with which we are concerned. Those interested in pronouncements on the subject in other jurisdictions may read with interest and perhaps profit: State ex rel. Johnson, Atty. Gen., v. Childe, 139 Neb. 91, 295 N.W. 381; People ex rel. Chicago Bar Association v. Goodman, 366 Ill. 346, 8 N.E.2d 941, 111 A.L.R. 1, certiorari denied by United States Supreme Court, 302 U.S. 728, 58 S.Ct. 49, 82 L.Ed. 562; Clark v. Austin, 340 Mo. 467, 101 S.W.2d 977; Goodman v. Beall, 130 Ohio St. 427, 200 N.E. 470; State ex rel. Daniel, Atty. Gen., v. Wells, 191 S.C. 468, 5 S.E.2d 181. Later annotations appear in 125 A.L.R. 1173.

In most, if not all, of the cited cases, the courts hold that work, such as that done by Tennant in this case, constituted practicing law. But in view of the limitations and provisions of our statute above pointed out, we think it is distinguishable from those from other states.

■ Under this point and No. 4, Carr contends that Stringer, the assignee of Tennant, cannot recover the relief sought because of the Statute of Frauds. The original transaction between Carr and Tennant was in parol. Stringer's right of recovery is dependent upon Tennant having acquired an overriding royalty interest in the A. P. Carr lease of 7.42 acres. Such royalty interest is a part or interest in real estate. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; Smith v. Sorelle, 126 Tex. 353, 87 S.W.2d 703. Under the provisions of Article 3995, R.C.S. any parol agreement to sell and convey real estate is unenforceable unless some memorandum in writing of the parol agreement is signed by the party sought to be bound.

■ Stringer contends that certain letters, which were in evidence, as "Stringer's Exhibits 1 and 2", constitute sufficient memoranda to meet the statutory requirement to remove this situation from the effects of the Statute of Frauds. Omitting captions, these letters read:

"Stringer's Exhibit 1.
"Gladewater, Texas,
"July 29, 1938.
"Mr. Roy I. Tennant, Sr.
"Austin, Texas.
"Dear Sir:
"Your interest as shown on the enclosed statements is a 1/5 of 1/16 of 7/8 interest in the five wells operated by A. P. Carr on the Richey 'A' lease, which is equivalent to the 1/16 of 7/8 interest from one well.
"Under our agreement this interest shall continue until $10,000.00 has been paid out of 15/16 of 7/8 of one well, at which time it will then increase to 1/8 of 7/8 of one well and remain thus as long as the well continues to flow.
"When said well ceases to flow and is produced by pumping or other mechanical means, your interest then reverts back to the 1/16 of 7/8 of one well.
"The above is in accordance with an agreement between you and Mr. A. P. Carr.
"Yours very truly,
"A. P. Carr
"By (Signed) Plack Carr."

"Stringer's Exhibit No. 2.
"July 6, 1938.
"Mr. J. E. Craig, Secy-Treas.,
"Service Pipeline Co.,
"Gladewater, Texas.
"Dear Mr. Craig:
"I would appreciate it if you would upon receipt hereof, mail, to Hon. Roy I. Tennant, Sr., 1210 Colorado St., Austin, Texas, the one-sixteenth (1/16) override that has been held in suspense and accumulating from the 7/8 working interest in the W. T. Carr well.
"You will also each month and until further notice continue to mail check therefor to Mr. Tennant. This will eventually be increased to a 1/8, but you will be advised when such time arrives and probably before then, there will be a record assignment covering my obligation in this respect.
"I advise confidentially that this is tied up with the issuance of some additional permits for wells, and the sooner the matter is handled to the satisfaction of the

beneficiary, the sooner our wells will be drilled and added to your production schedule.

"Yours truly,
"(Signed) A. P. Carr."

Stringer pleaded that Carr executed and delivered to Tennant a written conveyance (of the royalty interest) of date July 29, 1938. The alleged purported conveyance is the letter of that date, designated above as "Stringer Exhibit No. 1." The jury found that the letter last referred to was written upon the authority of Carr, and for the purposes of this case we must so treat it. In his brief, Stringer still insists that the instrument constitutes a conveyance, and also argues that if not in fact a conveyance, that letter taken in connection with "Exhibit No. 2" (letter of date July 6, 1938, addressed to Mr. J. E. Craig) constitutes sufficient memoranda of the parol contract relied upon to take it out of the Statute of Frauds.

The "letter-agreement" as referred to by the court in his charge to the jury, does not purport to convey anything as required by Article 1288, R.C.S. Nor does the letter, taken in connection with Exhibit No. 2, contain sufficient memorandum to remove this controversy from the effects of the Statute of Frauds. Francis v. Thomas, 129 Tex. 579, 106 S.W.2d 257, opinion adopted by the Supreme Court. Without further extending this discussion, we observe that the instruments and memoranda discussed in the cited case, to our minds, are much more definite, and are more descriptive than the one before us. It was also held in the cited case that such memoranda would not support a recovery for specific performance of the parol agreement to which they were attempted to be applied. The points presented relative to the application of the Statute of Frauds in this transaction will be sustained.

There are other points presented which assert error in the improper admission of testimony and refusal to give certain requested issues, but in view of the disposition we have concluded to make of this appeal, they all become immaterial, except No. 5, which assigns as error the refusal of the court to sustain Carr's motion for judgment non obstante veredicto. This motion was overruled when it should have been sustained because of what we have said relating to Stringer's right of recovery being precluded under the Statute of Frauds. If

we are correct in our conclusions in this respect, an insurmountable barrier stands between Stringer and a recovery quieting his title to an interest in land, a recovery of the funds held in the registry of the court, or to have the parol contract between Carr and Tennant specially performed. The facts appear to have been fully developed and it becomes our duty to enter such judgment as the trial court should have entered.

Insofar as the judgment disposed of all parties other than cross-plaintiff J. D. Stringer and plaintiff and cross-defendant A. P. Carr, it is left undisturbed. But as between the named parties, the judgment will be reversed and here rendered, that cross-plaintiff J. D. Stringer take nothing by his cross-action and that plaintiff and cross-defendant A. P. Carr have judgment against J. D. Stringer for the recovery of the impounded fund of $2,223.91 held in the registry of the trial court, and his costs incurred. Judgment left undisturbed in part and reversed and rendered in part.