

# THE ATTORNEY GENERAL
## OF TEXAS

March 30, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Mack Wallace
Chairman
Railroad Commission of Texas
P. O. Drawer 12967
Austin, Texas   78711

Opinion No.  JM-660

Re:  Confiscation of production related equipment at abandoned well sites by agents of the Railroad Commission

Dear Mr. Wallace:

The questions you ask involve construction of section 89.085 of the Natural Resources Code, "Confiscation of Equipment to Cover Plugging Costs," which provides as follows:

> (a)  If a person acting as agent for the commission plugs or replugs a well, the commission may authorize the agent to confiscate any production-related equipment at the abandoned well site (abandoned by the operator of the well as defined in this chapter) for the purpose of wholly or partially compensating the agent for plugging or replugging the well.

> (b)  The commission shall adopt reasonable rules (including a provision for a public hearing) for determining whether production-related equipment at a well site is abandoned and for establishing the value of production-related equipment for purposes of compensating the agent.

To set the stage for your questions, you provide the following fact situations:

> The Railroad Commission, after notice to the operator, holds a hearing pursuant to section 89.085 of the Natural Resources Code to determine whether production-related equipment at a well site is abandoned and to establish the value of production-related equipment for purposes of compensating the agent. The operator does not appear at the hearing.

> a.  The Commission does not know whether there are any lienholders nor if the operator is insolvent or in bankruptcy. The commission determines that the production-related equipment at the well site is abandoned and

establishes the value of the equipment. The established value exceeds the cost the agent incurs to plug the well.

b. The operator is in bankruptcy and a trustee in bankruptcy has been appointed. The trustee has invoked 11 U.S.C. section 362 which automatically stays any and all activities against the debtor or against the property of the debtor.

c. The production-related equipment does have prior liens on it. Some of these liens are perfected and some are not.

You state that the Railroad Commission "is presented with the fact situations as stated" and the commission poses the following questions:

1. What is 'production-related equipment' as referred to in section 89.085?

2. Does the mere non-appearance by the operator at the hearing establish that such operator has abandoned the production-related equipment at the well site and, as a result, authorize a taking of such property by the commission's agent?

3. Section 89.085 states that 'abandoned by the operator of the well' will mean that as defined in chapter 89. However, 'abandoned by the operator of the well' is not statutorily defined in chapter 89. Should the commission apply case law to interpret the meaning of 'abandonment'? What does it take to prove abandonment? If the operator has abandoned the equipment, does the lessor or landowner have a right to the equipment? If so, whose right is superior? Since title to equipment which is abandoned vests in the first person to reduce it to possession; what constitutes 'reduced to possession?'

4. Is notice to the operator adequate notice, considering that the commission may not have jurisdiction over all lienholders of the production related equipment?

5. In the case where the value of the production-related equipment exceeds the cost incurred by the commission's agent to plug the well, should the commission retain the excess money? If more production-related equipment exists than is needed to compensate the agent,

does the commission have the duty to confiscate the additional equipment and safeguard it?

6.   Would the commission or the agent who plugs the well or both be the subject of a suit for conversion once the equipment is confiscated and sold?  If so, would the damages be confined to the value of the salvageable equipment minus the cost of plugging?  Would the commissioners or any Railroad Commission employee(s) be liable as individuals for damages?

7.   Is the commission precluded by federal law concerning bankruptcy from authorizing its agent to confiscate property which is in bankruptcy? Does the commission have a duty to find out if the operator has filed for bankruptcy?

8.   Does the statutory authorization provided for by section 89.085 give an agent a superior right to production-related equipment than a prior lienholder?  Would securing a statutory lien, under section 89.083 of the Natural Resources Code, be beneficial?  If so, what is required to secure it (filings, time periods, etc.) and does the statutory lien have priority over other liens? Would it have priority over a materialman's lien or a prior lessor?  Would the Railroad Commission be required to have a court foreclose on the lien? If so, would the Attorney General represent the Railroad Commission and where would venue lie?  Is article 5473 et seq. applicable to a Railroad Commission lien under section 89.083?

9.   Would a chapter 89 lien apply to an operator who is not within the chapter 89 definition but who has assumed responsibility for plugging?

10.  Is a constitutional lien available to the Railroad Commission?

11.  Does the fact that a wellbore is covered by a performance bond or a letter of credit change the procedure that should be followed by the Railroad Commission?  Does the commission have a duty in such an instance, to secure a lien and seek foreclosure?

Upon reviewing the language embodied in section 89.085 it was our initial reaction that the statute was facially unconstitutional under the due process clause of the Fourteenth Amendment to the United States Constitution.  Our examination in light of your questions only

served to strengthen our opinion that section 89.085 would not pass constitutional muster under due process requirements.

In Fuentes v. Shevin, 407 U.S. 67 (1972) the United States Supreme Court held that prejudgment provisions which deprived one of property without the right to be heard or without the participation of a judicial officer are a violation of the due process clause. In order to seize property before final judgment an adversary hearing was mandated.

Mitchell v. W.T. Grant Company, 416 U.S. 600 (1974), afforded the United States Supreme Court the vehicle to clarify its holding in Fuentes relative to prejudgment seizure of property. In Lincoln Ten, Ltd. v. White, 706 S.W.2d 125 (Tex. App. - Houston [14th Dist.] 1986, no writ), the court reviewed the foregoing Supreme Court opinions in passing on the validity of the seizure of property under a distress warrant pending the outcome of a suit for rent. The court applied the following standards set forth in Mitchell in determining the validity of the prejudgment seizure. Such writs are valid if

> (1) issued by judicial officers;
>
> (2) the affidavits and documents in support of said motion set out the facts relied on and are more than conclusion;
>
> (3) the debtor has an immediate right to a hearing; and
>
> (4) dissolution of the writ will be granted absent proof at the hearing.

Lincoln Ten, Ltd. v. White, 706 S.W.2d at 128. See Attorney General Opinion JM-510 (1986).

The court of appeals found that the issue at this stage of the proceeding "concerns possession pending trial and turns on the existence of the debt, the lien, and the delinquency." A determination of issues under section 89.085 clearly involves questions of debt, lien and abandonment. More importantly, Mitchell, Fuentes and Lincoln Ten, Ltd. address the minimal standards to satisfy due process requirements in prejudgment seizures. Section 89.085 provides for confiscation of property to satisfy a debt without regard to a future judicial determination of the issues.[1] "Confiscation" and "seizure"

---

1. The fact that the Railroad Commission may employ some of the most attractive and orderly means of arriving at its conclusions in the administration of its duties cannot be construed to mean that it is a court within the contemplation of the Texas Constitution. Carr v. Stringer, 171 S.W.2d 920, 922 (Tex. Civ. App. - Fort Worth 1943, writ ref'd). While its findings are quasi-judicial in nature, they can not be characterized as judicial determinations.

are not necessarily synonymous terms.  It is our opinion that even more stringent requirements may be necessary for a "confiscation" to meet due process standards than are required for a "seizure."  <u>See</u> Black's Law Dictionary 271, 1219 (5th ed. 1979).  It is our opinion that section 89.085 is unconstitutional in that it does not facially satisfy due process requirements for an adequate hearing to justify even a prejudgment seizure.

Our finding that section 89.085 is unconstitutional precludes the necessity of answering your specific questions.

S U M M A R Y

Section 89.085 of the Natural Resources Code, Confiscation of Equipment to cover Plugging Costs, is facially unconstitutional under the due process clause of the Fourteenth Amendment to the United States Constitution in that it fails to provide for an adequate hearing to determine the issues requisite to a confiscation and sale of the well operators equipment.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Tom G. Davis
Assistant Attorney General